**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| TERESA PRICE,                              )<br>                                            )<br>                        Plaintiff,          )<br>    v.                                     )<br>                                            )<br> TRANS UNION LLC and FINANCIAL              )<br> RECOVERIES,                                )<br>                                            )<br>                        Defendants.         )<br>                                            ) | C.A. No: 2:09-cv-01332-ER |

**TRANS UNION LLC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SANCTIONS**

**I.     INTRODUCTION**

    **A.     Procedural Background**

Plaintiff commenced this action under the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq*, ("FCRA") alleging, *inter alia*, that Trans Union inaccurately reported credit information to potential lenders and caused her harm.  To prepare its defenses, Trans Union served subpoenas on the entities that furnished credit information that appeared on Plaintiff's file.  (The "Accuracy Subpoenas" collectively *Exhibit A* hereto.)  The Accuracy Subpoenas are designed to explore whether the information plaintiff claims is inaccurate is, in reality, accurate.  Trans Union also served subpoenas on entities which plaintiff claims denied her credit due to the allegedly inaccurate information.  (The "Causation Subpoenas" composite *Exhibit B*.)

Plaintiff's counsel "responded" to Trans Union's subpoenas, not with a motion, but by sending improper letters to virtually all of subpoenaed parties "advising" each not to produce documents. (*See* the "Advice Letters" from Plaintiff's counsel, composite *Exhibit C*.)  Thereafter, Plaintiff's counsel sent letters to the recipients of the Causation Subpoenas advising them that the

objections were withdrawn and that "Plaintiff has no opinion regarding propriety of the subpoena and wages no objection to it." (*See* the "Withdrawal Letters" composite *Exhibit D*.)

Most of the instant subpoenas are outside of this district. Plaintiff's counsel full well knows that motions to quash or enforce must be made in the issuing court. As such, the Advice Letters a transparent vehicle to induce the subpoenaed parties to object (or not cooperate) and force Trans Union to litigate in foreign jurisdictions. With respect to the Withdrawal Letters, in which Plaintiff's counsel offers that he "has no opinion regarding the propriety of the subpoenas," the damage may already have been done; the letters do nothing to retract Plaintiff's counsel's previously unsolicited legal advice.

Thus, Trans Union requests that the Court enter an order sanctioning plaintiff by requiring her counsel to send letters to each subpoenaed entity retracting the Advice Letters, informing the recipients of the Withdrawal Letters that the subpoenas are, in fact, proper, and attaching an Order of this Court stating that production of the materials is authorized. No other relief can or will mitigate plaintiff's effort to obstruct rightful discovery.

      **B.**      **Significance of the Sought Information**

The subpoenas Trans Union served are routine in FCRA cases where the plaintiff denies ownership and claims denials of credit resulted from inaccuracies. Essential elements of her FCRA claims are 1) inaccuracy; 2) failure to follow reasonable procedures; 3) causation; and 4) harm, all of which are Plaintiff's burden to prove. *Philbin v. Trans Union Corp.* 101 F.3d 957 (3d Cir. 1996). Trans Union's subpoenas are designed to determine whether she can meet her burden on every one of these elements. The Accuracy Subpoenas obviously relate to the first element, accuracy. It is certainly not unwarranted to discover information about the accounts, who opened them, and how they were used.

The foregoing is not theoretical. In this very case, plaintiff sued Financial Recoveries for inaccurate reporting, Complaint, ¶33, Dkt #1). Thereafter, Financial demonstrated that the medical debts it was collecting were in fact plaintiff's responsibility. There appears to be other confusion over which accounts really belong to plaintiff. For example, in Plaintiff's Responses to Trans Union's Interrogatory No. 3 (attached hereto as *Exhibit E*), she identifies as inaccurate accounts with, *inter alia*, Bank of America, Capital One, HSBC Bank, Jefferson Capital Systems, and National Recovery Agency; **entities that received the Accuracy Subpoenas**. But, curiously, in an almost identical lawsuit plaintiff filed in the United States District Court for the District of New Jersey, C.A. No: 1:09-cv-01843-NLH-JS, against the other two national consumer reporting agencies, plaintiff claims as inaccurate Wilmington Financial accounts; Wilmington Financial accounts are not disputed. *Compare* New Jersey Complaint, ¶8, *Exhibit F* hereto with *Exhibit E*, Interrogatory Response No. 3, and instant Complaint, ¶8, Dkt#1.

It is also beyond cavil that the Causation Subpoenas relate to the third and fourth *Philbin* elements, causation and harm. The Causation Subpoenas were served on the entities that plaintiff claims denied her credit applications due to credit information furnished by Trans Union. Plaintiff's Interrogatory Response No. 6 identified, *inter alia*, CitiFinancial, WFS/Wachovia and Wilmington Trust Corporation as lenders which denied plaintiff's credit applications because of inaccurately reported credit information. (*See Exhibit D*.) The Causation Subpoenas were served to obtain application and eligibility information to determine whether inaccurate information was reported by Trans Union. Also, Trans Union seeks to learn whether some other accurate information was the actual cause of a credit denial. Based upon the accurate content of plaintiff's report, Trans Union believes accurate derogatory information, or possibly application information (such as income or collateral deficiencies) may have caused

3

denials, not inaccurately reported information. *See Philbin, supra,* at 963, *Neptune v. Trans Union Corp.*, 1993 WL 505601, at *2 (E.D. Pa. Dec. 8, 1993), *aff'd,* 27 F.3d 558 (3d Cir. 1994), *cited with approval in Philbin*.

Inadvertent or not, Plaintiff impeded the Causation Subpoenas regarding crucial evidence on which she has the burden of proof. *Philbin*, *supra*, Undoubtedly, all of the subpoenaed entities will not risk a lawsuit by producing materials in the face of plaintiff's unsolicited legal advice warning against production. The Withdrawal Letters, which state that her counsel has no opinion on whether the subpoenas are valid, may still chill the subpoenaed parties from responding. Thus, plaintiff's interference will prevent (or certainly delay) Trans Union from discovering whether plaintiff's accurate derogatory information (or some other item of information) actually caused a denial. Without regard to plaintiff's burden, the absence of causation is a complete defense which Trans Union is entitled to pursue.

## II. ARGUMENT

### A. THE ADVICE LETTERS LACK MERIT AND ARE PROCEDURALLY IMPROPER

The Advice Letters themselves are entirely without merit and misleading. Whether *plaintiff* "finds" that Trans Union's discovery request "has no basis" or "relevance" to *her* case is plainly not a proper objection to discovery, even if properly asserted. Further, plaintiff has no standing to assert privacy concerns if the subpoenaed information is not, as she alleges, her financial information. The following excerpts from the Advice Letters highlight the obstructive nature of plaintiff's effort:

> Please be advised that **Plaintiff has waged an objection** with Trans Union due to the extremely broad and intrusive nature of the requests in the subpoena. **Plaintiff finds no legitimate basis for Trans Union to request** the highly private and financially sensitive

> information they seek with this subpoena including but not limited to billing and collection records.  Billing histories have ***no relevance to Plaintiff's case.***  Indeed virtually all of the documents or information Trans Union seeks has ***no relevance to Plaintiff's case.***
>
> Since production of the documents and information requested in the subpoena would result in significant intrusion upon the privacy of the relevant individual who is the target of this improper request, ***we feel compelled to advise your organization of these concerns and expect your cooperation in refraining from providing documents*** and information that would result in an impermissible and unnecessary invasion of privacy.  (Emphasis supplied)

Plaintiff's Advice Letters are also procedurally improper.  Fed.R.Civ.P. 45 allows the subpoenaed party only to object.  Plaintiff has no such procedural right and certainly no authority to "wage" an objection by letter to the witness. Plaintiff's proper procedural course, if a meritorious privacy objection even exists, was to move to quash the subpoenas.  *See*, *e.g.*, *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979).

But here, Plaintiff has not and cannot asserted any such privilege or relevant privacy interest.  On the contrary, she claims that she does ***not*** have any ownership interest in the accounts which are subject to the Accuracy Subpoenas.  *See Exhibit A,* Response No. 3. As such, plaintiff lacks standing to object. *Brown*, *supra*.  With respect to both the Accuracy Subpoenas and the Causation Subpoenas, Plaintiff cites no law, rule or regulation that would prevent the subpoenaed financial institutions from providing all of the information sought in response to Trans Union's valid subpoenas; none exists.  Her counsel's later expression to the entities that received the Causation Subpoenas, that she has no opinion on the topic, says nothing about the propriety or validity of plaintiff's counsel's previous advice.  Trans Union respectfully submits that nothing short of a court order can undo this damage.

### B. THE ADVICE LETTERS ARE CONTRARY TO THE RULES OF PROFESSIONAL CONDUCT.

Undoubtedly, the objections were meant solely to frustrate and impede Trans Union's attempt to obtain evidence about the veracity of plaintiff's claims of inaccuracy and causation. Under such circumstances, her counsel's effort is contrary to Pa. Rule of Professional Conduct 3.4(a) which provides:

> A lawyer shall not:
> (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act;

Courts have sanctioned obstructions of discovery, and imposed attorney's fees and costs pursuant to 28 U.S.C. §1927. In *In re Minniti*, 242 B.R. 843, 850 (E.B. Pa. 2000), the Court noted that where an attorney advised a subpoenaed witness to conceal information and not speak to the adversary's counsel, the conduct constituted "serious violations of the ethical rules." *Citing Harlan v. Lewis*, 141 F.R.D. 107 (E.D. Ark. 1992), *aff'd*, 982 F.2d 1255 (8th Cir. 1993).

Here, Plaintiff's counsel wrongly "***advise[d]***" the subpoenaed parties away from producing materials directly relevant to plaintiff's claims. Such unsolicited legal advice is entirely improper when directed to a duly subpoenaed witness.

The relief sought instantly is a most mild sanction; Trans Union seeks an order compelling Plaintiff's counsel to inform the subpoenaed parties that they had no right to object and informing them that this Court has authorized release of the subpoenaed materials. Such relief is within the Court's discretion and inherent power to "to control the conduct of those who appear before them." *Fellheimer, Eichen & Braverman v. Charter Technologies*, 57 F.3d 1215, 1224 (3d Cir. 1995), *citing Chambers v. Nasco, Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991).

### III. CONCLUSION

Trans Union respectfully submits that the only way to undo plaintiff's counsel's wrongful interference is a sanction order requiring plaintiff's counsel to send a letter rescinding each of the Advise Letters with a copy of the Court's Order directing that the rescission letters be sent, and stating that the Court authorizes the parties to respond to the subpoenas.

KOGAN, TRICHON & WERTHEIMER, P.C.

*/s/ Bruce S. Luckman*
BRUCE S. LUCKMAN
1818 Market Street, 30th Floor
Philadelphia, PA 19103
(215) 575-7622; (215) 575-7688 – fax

*Counsel for Defendant Trans Union LLC*

DATED:   October 29, 2009