IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


TERESA PRICE                    :    CIVIL ACTION
                                :    NO. 09-CV-1332
                                :
          Plaintiff,            :
                                :
     v.                         :
                                :
                                :
TRANS UNION, LLC                :
                                :
                                :
          Defendant.            :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      November 23, 2010


## I.    INTRODUCTION

          This case arises under the Fair Credit Reporting Act,

15 U.S.C. §§ 1681, et seq. ("FCRA").  Plaintiff Teresa Price

("Plaintiff" or "Price") claims Defendant Trans Union, LLC

("Defendant" or "TU"), a national consumer reporting agency

("CRA"), willfully and/or negligently violated sections 1681e(b)

and 1681i of the FCRA.  In particular, Plaintiff claims Defendant

willfully and/or negligently violated the FCRA by failing to

follow reasonable procedures to assure the maximum possible

accuracy of information on Plaintiff's credit report, as required

-1-

by FCRA § 1681e(b).[1]  Additionally, Plaintiff claims Defendant

willfully and/or negligently violated FCRA § 1681i by failing to

permanently correct inaccuracies in Plaintiff's credit file

within thirty days of disputing such inaccuracies.[2]

---

[1]

        Title 15, section 1681e(b), of the United States
Code provides:

(b) Accuracy of report

Whenever a consumer reporting agency prepares a
consumer report it shall follow reasonable
procedures to assure maximum possible accuracy of
the information concerning the individual about
whom the report relates.

15 U.S.C. § 1681e(b), <u>amended on other grounds by</u>,
Pub. L. No. 111-203 (July 21, 2010).

[2]

        Title 15, section 1681i(a)(1)(A), of the United
States Code provides:

(a) Reinvestigations of disputed information

(1) Reinvestigation required.--

(A) In general.--Subject to subsection (f) of this
section, if the completeness or accuracy of any
item of information contained in a consumer's file
at a consumer reporting agency is disputed by the
consumer and the consumer notifies the agency
directly, or indirectly through a reseller, of
such dispute, the agency shall, free of charge,
conduct a reasonable reinvestigation to determine
whether the disputed information is inaccurate and
record the current status of the disputed
information, or delete the item from the file in
accordance with paragraph (5), before the end of
the 30-day period beginning on the date on which
the agency receives the notice of the dispute from
the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A), <u>amended on other</u>

-2-

Defendant filed a motion for partial summary judgment. Defendant contests all of Plaintiff's § 1681i claims and all of Plaintiff's § 1681e(b) claims except those related to a negligent violation § 1681e(b) in connection with Plaintiff's disputed March 12, 2009 credit report.  For the reasons stated below, Defendant's motion will be denied.[3] _____

## II.   BACKGROUND

Defendant generates consumer credit reports via a particularized matching procedure.  (Def.'s Mot. at 15.) Defendant receives credit information from tens of thousands of sources on a monthly basis.  (Id. at 16.)  This information is then processed so that information associated with sufficiently similar identifying information can be stored together in electronic files.  There are more electronic files than consumers because identifying information associated with a consumer can vary from creditor to creditor given that consumers move, marry/divorce, and change last names.  (Id. 16-17.)  When a

_____

grounds by, Pub. L. No. 111-203 (July 21, 2010).

[3]    The Court finds that summary judgment is inappropriate as to all of Plaintiff's claims for negligent violations of sections 1681e(b) and  1681i.  Plaintiff has pointed to facts of record that raise a genuine issue of material fact as to whether Defendant violated sections 1681e(b) and 1681i willfully, which is a much higher standard than mere negligence.  Consequently, the Court will not individually analyze each claim for a negligent FCRA violation.

-3-

potential creditor enters identifying information for an individual the aforementioned matching logic combines all files which meet the matching criteria and thereafter maintains only one file on the information.  Because exact matches are not required, two files may mix because the two individuals represented by the file have common addresses, last names, social security numbers, etc.  When files from different individuals mix, a "mixed file" is created.  (Id. 17-18)

Plaintiff's claims stem from Defendant's inaccurate matching procedure.  (Id. at 15 (stating TU's "computer system uses a matching logic which does not require an exact match of information being compared").)  Plaintiff alleges that Defendant has been mixing Plaintiff's credit information with another consumer's credit information for the better part of a decade. (Pl.'s Resp. at 3.)  Plaintiff states that she has disputed the fact that her file has been mixed with information from another individual with the same/similar name since as early as November 2001.  Moreover, Defendant's own witnesses and documents confirm that Plaintiff has disputed the mixed file issue for years.  (Id. at 3, Ex. 1-2.)  In 2005 and 2007, Plaintiff was forced to dispute certain accounts on her credit report that did not belong to her.  (Id.)  Despite being warned three times, in 2001, 2005, and 2007, that Defendant was including another person's credit information in Plaintiff's credit file, Defendant continued to

-4-

substantially mix Plaintiff's credit file in 2009 and 2010.  (Id. at 4.)  By March 2009, Plaintiff's credit file contained various public records, derogatory accounts, and inquiries that belonged to another Teresa Price.  (Id. at 5.)

Plaintiff learned of the 2009 reporting problems on March 12, 2009, when she was denied financing for a car that she wanted to purchase for her son.  (Id. at 5-6.)  Plaintiff alleges that, in March 2009, once she discovered the various problems on her credit report she promptly called Defendant and disputed the information.  (Id.)  Additionally, Plaintiff advised Defendant that she had previously waged disputes with Defendant for this same reason.  (Id.)  After the March 2009 call, Defendant deleted one piece of the derogatory information—the bankruptcy, but Defendant did not investigate, delete, or correct any of the other public records, accounts, or information on Plaintiff's file which did not belong to her.  (Id.)  Even after Plaintiff brought suit, in July 2009, Plaintiff alleges that she learned of erroneous information on her report because her attorney was provided with a purportedly corrected credit report prior to the Rule 16 conference; however, this report showed that the majority of derogatory information belonging to another Teresa Price was still showing up on Plaintiff's report.  (Id.)

Typically, when Defendant is repeatedly confronted with a mixed file problem, Defendant puts a "do not merge" tag on the

-5-

files that mix.  (Id. at 13.)  The "do not merge" procedure works
because it uses very strict matching criteria.  (Id.)  When a
file has a "do not merge" tag placed on it then digit-for-digit
matching of all nine digits of a social security number are
required.  Implementing the "do not merge" procedure only takes a
few seconds, and it "involves the mere click of a button on a
computer screen."  (Id. at 15.)  Despite the repeated mixing
problems with Plaintiff's file, Defendant did not employ the "do
not merge" procedure in 2001, 2005, 2007, or 2009.  (Id. at 16.)

　　　　Plaintiff requests actual damages arising from the loss
of credit opportunities, injury to her credit reputation, and
emotional distress deriving from Defendant's conduct and
Plaintiff's subsequent credit problems due to the inaccurate
information shown on her credit reports.


## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

　　　　Defendant seeks summary judgment on all of Plaintiff's
reinvestigation claims under FCRA § 1681i; all of Plaintiff's
willfulness claims under FCRA § 1681e(b); and Plaintiff's §
1681e(b) negligence claims except those relating to Defendant's
reporting of information, on March 12, 2009, in connection with
Plaintiff's attempt to obtain a loan to help her son purchase a
car.[4]

---

[4]　　Discovery in the case is now complete.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

-7-

A.   <u>Defendant Cannot Assert the Accuracy Defense</u>

Defendant states that Plaintiff's § 1681(e)(b) and § 1681i claims should be dismissed because Plaintiff has not established that information in Plaintiff's credit report was inaccurate.  When a Plaintiff claims a violation of § 1681(e)(b) or § 1681i, the Plaintiff has the burden of proving that the disputed information is inaccurate.  <u>Cortez v. Trans Union, LLC</u>, 617 F.3d 688, 708 (3d Cir. 2010) (stating negligent noncompliance of § 1681(e)(b) consists of the following four elements: (1) inaccurate information was included in a consumer's credit report . . . .)(internal citation omitted); <u>Klotz v. Trans Union, LLC</u>, 246 F.R.D. 208, 213 (E.D. Pa. 2007) (stating that § 1681i claims require a showing that the disputed information is inaccurate (citing <u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220, 226-27 (3d Cir. 1997))).  Defendant contends that Plaintiff has not met her burden of establishing that the information contained in her consumer reports was inaccurate therefore the accuracy defense bars Plaintiff's § 1681(e)(b) and § 1681i claims.

Typically, the accuracy defense is an issue of fact. Here, Plaintiff has pointed to facts of record that create a genuine question of material fact.  "[A] consumer report cannot be 'accura[te]' under either section 1681e(b) or section 1681i if it contains information that is legally incorrect." <u>Crane v. Trans Union, LLC</u>, 282 F. Supp. 2d 311, 318 (E.D. Pa. 2003)

-8-

(citing Cushman, 115 F.3d at 226-27).  In Defendant's motion, Defendant recognizes that Plaintiff alleged an inaccuracy regarding a bankruptcy, two tax lines, and eight "tradelines." (Def.'s Mot. at 2.)  As such, Defendant acknowledges that there were disputed inaccuracies.  Furthermore, Plaintiff states that these are not the only inaccuracies; however, even if they were, they are more than enough to raise a genuine issue of material fact as to evidence of an inaccuracy.  (Pl.'s Resp. at 21-22 (establishing at least thirty-seven inaccuracies by pointing to responses to interrogatories, Defendant's credit file records, and third party discovery).)

        Plaintiff has pointed to facts of record that, if correct, would show there were inaccuracies in Plaintiff's consumer reports.  Moreover, Defendant has acknowledged there were certain inaccuracies.  Based on the foregoing, Defendant cannot assert the accuracy defense and summary judgment will be denied.


        B.    Plaintiff's § 1681i Claims are Not Inappropriate
              Because There is a Genuine Issue of Material Fact as to
              Whether the Allegedly Inaccurate Accounts Were Timely
              Deleted, Never Disputed, or Accurate

        Defendant states that Plaintiff does not have a valid claim under § 1681i because any disputed information was investigated and deleted within thirty days of receiving notice of dispute.  (Def.'s Mot. at 9 (stating TU deleted the Key Bank,

Capital Credit, CBE, and Compucredit accounts, and the Chapter 7 Bankruptcy).)  Plaintiff, however, argues that she has a valid § 1681i claim based on her March 12, 2009 phone call.  During this phone call, Plaintiff disputed various pieces of false information that were on her consumer report.  Plaintiff points to her Declaration dated May 24, 2010 to prove that, on March 12, 2009, she complained of various items on her consumer report including a bankruptcy, various public records, credit accounts, and personal information.  (Pl.'s Resp. at Ex. 9.)  Defendant, however, argues that according to Plaintiff's deposition, taken prior to the Declaration, Plaintiff only disputed the invalid bankruptcy during her March 12, 2009 phone call.

Defendant states that the Court should not consider the Declaration made after Plaintiff's deposition, because it is a "sham."  Consequently, before determining whether Plaintiff has a valid § 1681i claim, the Court must first determine if the Declaration can be considered or whether it violates the sham doctrine.  The Federal Rules of Civil Procedure do not prescribe how courts should address contradictory subsequent affidavits.  However, the Third Circuit has held that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."  Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (citing Hackman v. Valley

-10-

<u>Fair</u>, 932 F.2d 239, 241 (3d Cir. 1991)).  This principle of summary judgment practice is often referred to as the "sham affidavit doctrine."

A sham affidavit cannot raise a genuine issue of material fact because it is merely a variance from earlier deposition testimony; therefore, no reasonable jury could rely on it to find for the nonmovant.  <u>Jiminez v. All Am. Rathskeller, Inc.</u>, 503 F.3d 247, 253 (3d Cir. 2007).  If an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate.  <u>Id.</u>

Some federal courts have adopted a particularly harsh version of the sham affidavit doctrine.  These courts hold that whenever a subsequent affidavit contradicts prior deposition testimony it should be disregarded.  <u>Id.</u> at 254.  The Third Circuit, however, has adopted a more flexible approach.  <u>See</u> <u>Baer</u>, 392 F.3d at 624; <u>Hackman</u>, 932 F.2d at 241; <u>Martin v. Merrell Dow Pharm., Inc.</u>, 851 F.2d 703, 705-06 (3d Cir. 1988); <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266-67 (9th Cir. 1991).  In <u>Baer</u>, the Third Circuit stated that "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit."  392 F.3d at 625.  Such corroborating

-11-

evidence may establish that the affiant was "understandably" mistaken, confused, or not in possession of all the facts during the previous deposition.  Id.  Additionally, the Third Circuit has held that an affiant has the opportunity to offer a "satisfactory explanation" for the conflict between the prior deposition and the affidavit.  Hackman, 932 F.2d at 241.  When a party does not adequately explain the contradiction, it is appropriate for the district court to disregard the subsequent affidavit.

In this case, Plaintiff filed a sur-reply explaining that the Declaration does not contradict Plaintiff's prior deposition but, rather, supplements the deposition.  Plaintiff points out that the deposition makes reference to inaccuracies other than the bankruptcy and the Declaration was created to elaborate on these other inaccuracies.  (Pl.'s sur-reply at 1-2.) During the deposition, Plaintiff was asked how she learned that there was a bankruptcy on her credit.  Plaintiff responded, "[b]ecause I was trying to assist my son in buying a car and my credit report came back with a bankruptcy among other things." (Id. (citing Ex. 1, Pl.'s Dep. Trans. 69:5-14(emphasis added)).) Plaintiff states that during her deposition Defendant never fully questioned her about inaccuracies other than the bankruptcy; consequently, the Declaration was submitted to clarify the

issue.[5]  Based on the foregoing, the Declaration cannot be deemed a contradicting document and does not fall within the sham doctrine.

Finding that the Declaration properly supplements Plaintiff's previous answers at deposition, the Court must next determine whether there are any questions of material fact in regards to Plaintiff's § 1681i claim.  Section 1681i(a)(1)(A) requires CRAs, such as Defendant, to "conduct a reasonable reinvestigation to determine whether the disputed information [was] inaccurate . . . ."  Section 1681i(a)(5)(A) states that, if after the reinvestigation any item is found to be incorrect or incomplete, "the consumer reporting agency shall—(i) promptly delete the item . . . or modify that item or information, as appropriate, based on the results of the reinvestigation." Moreover, CRAs are charged with preventing "reinsertion" of previously deleted material back onto the consumer's credit file. 15 U.S.C. § 1681i(a)(5)(B), amended on other grounds by, by Pub. L. No. 111-203 (July 21, 2010).

Plaintiff argues that sections 1681i(a)(1)(A) and (a)(5)(A) were violated because Defendant failed to properly

---

[5]     A review of Plaintiff's deposition reveals that, in reference to the March 12, 2009 dispute, Defendant's attorney only questioned Plaintiff about the bankruptcy even though Plaintiff alerted Defendant's attorney to various inaccuracies when questioning on the topic began.  (Pl.'s sur-reply at 1-2 (citing Ex. 1, Pl.'s Dep. Trans. 69:5-14 and 88:1-6).)

reinvestigate Plaintiff's March 12, 2009 notification of false public records, credit accounts, and erroneous personal information.  Additionally, Section 1681i(a)(5)(B) was violated given that Defendant reinserted the inaccurate bankruptcy, which was previously deleted on March 12, 2009, back into Plaintiff's consumer report on July 13, 2009.

Based on Defendant's failure to adequately tend to all the inaccuracies on Plaintiff's file as of March 21, 2009, and the reinsertion of the bankruptcy, Plaintiff has brought a valid § 1681i claim against Defendant and summary judgment will be denied.

C.   Plaintiff's § 1681e(b) Claim is Not Inappropriate Because There is a Genuine Issue of Material Fact as to Whether Plaintiff Cannot Establish Causation

When a Plaintiff claims a violation of § 1681e(b) the Plaintiff has the burden to prove that any inaccurate information in the consumer report caused the consumer's injury.  Cortez, 617 F.3d at 708 ("Negligent noncompliance with §1681e(b) consists of the following four elements: . . . (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.").  Defendant argues that Plaintiff cannot show she was denied credit and suffered credit harm because of the Defendant's negligent or willful allowance of inaccurate information in Plaintiff's credit report.  (Def.'s

-14-

Mot. at 12.)  Defendant states that any credit harm was due to
the accurate unfavorable information that was on Plaintiff's
credit report.  (<u>Id.</u>)  Plaintiff, however, points out that even
if she has not established that her credit harm was due to
Defendant's actions, summary judgment and dismissal of
Plaintiff's § 1681e(b) claims is unwarranted because she has
asked for three types of damages, credit harm being only one of
these types of damages.  (Pl.'s Resp. at 26.)

     The three types of damages Plaintiff asks for are (1)
credit harm/lost credit opportunities; (2) credit defamation; and
(3) emotional distress (anxiety, frustration, embarrassment,
humiliation, etc.).  Additionally, the FCRA permits statutory
damages, punitive damages, and attorneys' fees and costs.
Defendant does not challenge Plaintiff's evidence or right to
recover actual damages for credit defamation and emotional
distress.  The only area of contention is Plaintiff's claim for
credit harm/lost credit opportunities; therefore, even if
Defendant is correct, Plaintiff could still pursue other valid
theories of recovery.  Additionally, summary judgment as to
Plaintiff's claim for credit harm/lost credit opportunities is
inappropriate because there are genuine issues of material fact
concerning causation.

     A claim for credit harm/loss credit opportunities can
form the basis for an award of damages under the FCRA.  <u>Lawrence</u>

v. Trans Union LLC, 296 F. Supp. 2d 582, 588 (E.D. Pa. 2003). The
Third Circuit has held that it is a jury issue whether a credit
reporting inaccuracy was a "substantial factor" in a lost credit
opportunity and that a consumer-plaintiff is minimally required
to present some evidence of a credit inaccuracy and then some
evidence of applying for and not obtaining credit. Philbin v.
Trans Union Corp., 101 F.3d 957, 966-70 (3d Cir. 1996), abrogated
on other grounds, Cortez, 617 F.3d at 688. Based on the
foregoing, a Plaintiff can establish credit harm without
pinpointing causal precision. Here, there is evidence from which
the jury could find actual damages of credit harm/loss of credit
opportunities due to the erroneous information placed on
Plaintiff's credit report. For example, Plaintiff was harmed by
Defendant's reporting of inaccurate and derogatory information to
Elan Financial in February 2009 and on other occasions. (Pl.'s
Resp at Ex. 22.) A jury could find that Plaintiff's mixed file
was a substantial factor in her inability to secure credit;
consequently, summary judgment should be denied.


     D.   Defendant Erroneously Argues that Plaintiff's Negligent
          and Willful § 1681i Claims Fail as a Matter of Law

     Section 1681n provides damages when a Defendant
willfully violates the FCRA. The meaning of willful is to be
ascertained according to the common law. Safeco Ins. Co. Of
America et al. v. Burr et al., 551 U.S. 47, 57 (2007). The

common law treated actions in "reckless disregard" of the law as
"willful" violations.  Id.  As such, "[t]he standard civil usage
thus counsels reading § 1681n(a)'s phrase 'willfully fails to
comply' as reaching reckless FCRA violations . . . ."  Id.
Additionally, the Court in Safeco implied that knowing violations
of the FCRA are "willful" violations.  Id. at 59 (stating knowing
violations are a more serious subcategory of willful violations).
Following Safeco, the Third Circuit has held that willful FCRA
violations can be "knowing" or ones that show a "reckless
disregard" for consumer rights.  Cushman, 115 F.3d at 227.
Moreover, the Cushman court held that a defendant may willfully
violate the FCRA by actions that are "on the same order as
willful concealments or misrepresentations."  Id.  Based on the
foregoing, summary judgment is inappropriate when there are
genuine issues of material fact as to whether Defendant knowingly
engaged in acts that violated the FCRA, acted with reckless
disregard as to violating the FCRA, or willfully concealed or
misrepresented information in an effort to skirt the requirements
of the FCRA.

        At a minimum, Plaintiff can defeat summary judgment as
to her § 1681i claims by showing Defendant acted in reckless
disregard of Plaintiff's rights when engaging in investigations
pursuant to § 1681i.  Recklessness is commonly interpreted as
conduct violating an objective standard—action entailing an

unjustifiably high risk of harm that is either known or so obvious that it should be known.  See <u>Safeco</u>, 551 U.S. at 49. Whether the Defendant's conduct violates this objective standard is a fact-bound inquiry that should be answered by a jury.  See <u>Cushman</u>, 115 F.3d at 223, 227 (reversing and remanding a trial court judgment as a matter of law and instructing trial court to consider Plaintiff's FCRA wilfulness claim in light of the reckless disregard standard).  This is consistent with a number of Eastern District decisions which, following <u>Cushman</u>, have rejected motions for summary judgment in FCRA willfulness cases finding that the reckless disregard determination should be left for the jury.  See <u>Lawrence</u>, 296 F. Supp. 2d at 590 (denying summary judgment to CRA for FCRA willfulness claim); <u>Crane</u>, 282 F. Supp. 2d at 321 (same); <u>Evantash v. G.E. Capital Mortgage Servs., Inc.</u>, No. 02-cv-1188, 2003 WL 22844198, at *8 (E.D. Pa. Nov. 25, 2003) (same).

Here, the issue of whether Defendant acted in reckless disregard when investigating Plaintiff's file and violated § 1681i presents a jury question.  Plaintiff has provided evidence that, if true, shows that her file continually had inaccurate facts, Plaintiff notified Defendant of the inaccuracies on various occasions, and Defendant repeatedly let the inaccuracies continue for decades.  (Pl.'s Resp. at 43.)  Plaintiff put Defendant on notice in 2001, 2005, 2007, and 2009 that another

consumer's information was being mixed into her file.  Even though Defendant was on notice of the continual problems with Plaintiff's file, Defendant failed to use its "do not merge" procedures to prevent the mixing.  Additionally, in March 2009, after being put on notice of various inaccuracies, Defendant only investigated one inaccuracy—the bankruptcy.  Moreover, in violation of § 1681i(a)(5)(i), Defendant allowed for the inaccurate bankruptcy, reported in March 2009, to be reinserted onto Plaintiff's file.

Given Defendant's general knowledge of the mixed file problem and Defendant's failure to act to ensure these problems did not continue, a jury could reasonably find that Defendant acted in reckless disregard and summary judgment should be denied.[6]

E.   Defendant Erroneously Argues that Plaintiff's Willful § 1681e(b) Claim and Negligent § 1681e(b) Claim Fail as a Matter of Law

Section 1681e(b) requires CRAs to follow "reasonable procedures to assure maximum possible accuracy" when preparing consumer reports.  Defendant argues that to determine whether Defendant willfully violated this section of the FCRA, the Court

---

[6]    Since negligence is a lower standard than willfulness, Defendant's motion for summary judgment as to whether Defendant negligently violated § 1681i will also be denied.  See supra n.3, at 3.

must examine whether the Defendant's reading of the statute was objectively unreasonable.  <u>Safeco</u>, 551 U.S. at 69-70.  Defendant argues that, based on <u>Safeco</u>, Defendant's reading of the statute is a "threshold" question.  Defendant states that its interpretation of the statute was not objectively unreasonable thus the matching procedures it enacted were in accordance with the requirements of § 1681e(b).

<u>Safeco</u>, however, did not hold that when determining whether there is a willful violation of the FRCA the Court must always first do a threshold test and determine whether a Defendant's "reading" of the statute was objectively unreasonable.  In <u>Safeco</u>, the issue before the Court was whether there was a willful violation of § 1681a(k)(1)(B)(I).  The Court had to interpret that section's use of the term "increase" and determine whether Defendant's interpretation of that term was objectively unreasonable because the FCRA is silent on this point.  Additionally, no court of appeals or the Federal Trade Commission ("FTC") had issued guidance on interpretation of the term "increase."  <u>Id.</u> at 69-70.

This case, however, is distinguishable from <u>Safeco</u> because § 1681e(b) does not contain any statutory text that "is less than pellucid and which has not been construed in detail by the Courts of Appeals."  (Pl.'s sur-reply at 5.)  Defendant's belief in its reading of the statute is no defense to willfulness

-20-

under Safeco.  What is at issue is not Defendant's subjective reading of the statute, but rather whether the reading of the statute proposed by the Defendant was objectively reasonable in this case.  Defendant cannot argue that a reasonable person would be confused as to the meaning of its FCRA duties under § 1681e(b) given that, at the time, at least three courts of appeals had construed the meaning of § 1681e(b) against TU in mixed file cases similar to this one.  (Pl.'s Resp. at 48.)

Additionally, the FTC specifically warns CRAs to adequately review their procedures when they learn of errors in their reports that may indicate systemic problems.  An example of an error that would require such review is the issuance of a consumer report "containing information on two or more consumers (e.g., information that was mixed in the file) in response to a request for a report on only one of those consumers."  16 C.F.R. pt. 600, App. (Part 3.A of commentary on § 607 of FCRA, codified at section 1681e(b)).

Plaintiff's claim is predicated on Defendant's repeated failure to use the "do not merge" procedure and its unwillingness to permanently correct Plaintiff's mixed file despite her disputes that another person's information appeared on her credit report in 2001, 2005, 2007, and 2009.  Defendant has a "do not merge procedure" which is its only remedy to mitigate the occurrence of a mixed file.  (Pl.'s Resp. at 13.)  Depositions

indicate that the "do not merge" procedure is used to prevent mixed files if Defendant knows of a mixing problem.  The procedure uses strict matching criteria.  (<u>Id.</u> at 14.)  When Defendant is aware of a problem with a file it puts a tag on it so it will not merge with another file unless there is a digit-for-digit match for all nine digits of the social security number.  (<u>Id.</u>)  Here, Plaintiff has pointed to facts of record that a jury could reasonably find that Defendant acted in reckless disregard of the FCRA by not implicating its "do not merge" procedure even though Plaintiff continually disputed various problems on her credit reports and informed Defendant that another person's information was appearing on her credit reports.  (Pl.'s sur-reply at 4.)  Based on the foregoing, summary judgment as to Plaintiff's claims for willful or negligent violations of § 1681e(b) will be denied.


**IV.   CONCLUSION**

For the foregoing reasons, Defendant's motion for partial summary judgment is denied.  An appropriate Order will follow.