IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERESA PRICE, | : | CIVIL ACTION |
| | : | NO. 09-1332 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRANS UNION, L.L.C., et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MARCH 16, 2012

TABLE OF CONTENTS

I.    INTRODUCTION...........................................2
II.   BACKGROUND.............................................3
III.  STANDARDS OF REVIEW....................................7
      A.   Rule 50 Motion for Judgment as a Matter of Law....7
      B.   Rule 59 Motion for New Trial......................9
IV.   DISCUSSION............................................10
      A.   Defendant's Motion for Renewed Judgment as a Matter of
           Law..............................................10
           1.   Burden of Proof.............................12
           2.   Sufficiency of the Evidence.................13
                a.   Applicable Law.........................13
                b.   Analysis...............................14
                     i.   Wilmington Trust report error.....15
                     ii.  Record of Plaintiff's previous disputes
                          with Defendant....................18
      B.   Plaintiff's Motion for New Trial.................27
           1.   Defense Counsel's Withholding of Evidence...28
                a.   Applicable Law.........................28
                b.   Analysis...............................29
                     i.   Withheld credit report...........29
                     ii.  Withheld trade line address screen...32
           2.   Defense Counsel's Misconduct During Examination

                of Plaintiff...................................36
                a.    Applicable Law..........................36
                b.    Analysis................................37
        3.    Defense Counsel's Misconduct During Closing
                Statement......................................46
                a.    Applicable Law..........................46
                b.    Analysis................................47
        4.    Alleged Court Error in Evidentiary Rulings.....55
                a.    Applicable Law..........................55
                b.    Analysis................................56
                i.    Not permitting Plaintiff to introduce
                        evidence of willful violation of the
                        FCRA..................................57
                ii.   Permitting Defendant to introduce
                        evidence of Plaintiff's lawsuits
                        against Equifax, Experian, and
                        Financial Recoveries..................64
        5.    Alleged Court Error in Denying Plaintiff's Jury
                Instructions...................................66
                a.    Applicable Law..........................66
                b.    Analysis................................67
        6.    Cumulative Effect of Errors....................72
V.   CONCLUSION.........................................73

## I.    INTRODUCTION

Plaintiff Teresa Price ("Plaintiff") brought this action against Defendant Trans Union, L.L.C. ("Defendant"),[1] a national consumer reporting agency ("CRA").  Plaintiff alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").  In particular, Plaintiff claimed Defendant willfully or negligently violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of

---

[1]     As discussed herein, Plaintiff also brought her action against Defendant-Financial Recoveries, but settled her dispute with it and dismissed Financial Recoveries from the lawsuit.

information on Plaintiff's credit report, as required by FCRA. 15 U.S.C. § 1681e(b)(2006).  Additionally, Plaintiff claimed Defendant willfully and/or negligently violated the FCRA by failing to permanently correct inaccuracies in Plaintiff's credit file within thirty days after disputing such inaccuracies.  <u>See</u> 15 U.S.C. § 1681i.  The case eventually went to trial.  The jury returned a verdict for Plaintiff on her claim of negligent violation of § 1681e(b) with a damage award of $10,000.  Defendant moves for a Renewed Judgment as a Matter of Law.  Plaintiff moves for a new trial.

For the reasons that follow, the Court will deny both motions.


## II.  BACKGROUND

Defendant generates consumer credit reports.  These reports are generated via a matching procedure.  Defendant receives credit information from tens of thousands of sources on a monthly basis.  Defendant processes this information so that information associated with sufficiently similar identifying information can be stored together in electronic files.  There are more electronic files than there are consumers because identifying information associated with a consumer can vary from creditor to creditor given that consumers move, marry/divorce,

3

and change last names.  When a potential creditor enters
identifying information for an individual the aforementioned
matching logic combines all files that meet the matching
criteria and, thereafter, maintains only one file with the
information.  Because exact matches are not required, two files
may mix because the two individuals represented by the file have
common addresses, last names, social security numbers, etc.
When files from different individuals mix, a "mixed file" is
created.

        Plaintiff's claims stem from Defendant's inaccurate
matching procedure.  Plaintiff claims that Defendant has been
mixing Plaintiff's credit information with another consumer's
credit information for the better part of a decade.  Plaintiff
states that she disputed the fact that her file has been mixed
with information from another individual with the same/similar
name since as early as November 2001.  In 2005 and 2007,
Plaintiff also disputed certain accounts on her credit report
that did not belong to her.  Despite having warnings in 2001,
2005, and 2007, that Defendant included another person's credit
information in Plaintiff's credit file, Defendant continued to
substantially mix Plaintiff's credit file in 2009 and 2010.  By
March 2009, Plaintiff's credit file contained various public

records, derogatory accounts, and inquiries that belonged to another Teresa Price ("non-party Teresa Price").

Plaintiff learned of the 2009 reporting problems when she was denied financing for a car that she wanted to purchase for her son.  In March 2009, once she discovered the various problems on her credit report, she promptly called Defendant and disputed the information.  Additionally, Plaintiff advised Defendant that she had previously filed disputes with Defendant for this same reason.  After the March 2009 call, Defendant deleted one piece of the derogatory information, the bankruptcy.

Typically, when Defendant is repeatedly confronted with a mixed-file problem, Defendant will put a "Do Not Merge" tag on the files that mix, provided specific criteria are met. The "Do Not Merge" procedure prevents the mixing of two consumers' credit histories because it uses very strict matching criteria.  When a file has a "Do Not Merge" tag placed on it, digit-for-digit matching of all nine digits of a social security number is required.  Implementing the "Do Not Merge" procedure only takes a few seconds, and after Defendant determines that a consumer's credit file is indeed mixed, it only has to make a selection on the computer.  Despite the repeated mixing problems with Plaintiff's file, Defendant did not employ the "Do Not Merge" procedure in 2001, 2005, or 2007.  Defendant contended

5

that at no time before the institution of this suit did Plaintiff sufficiently, according to Defendant's criteria, notify it that Plaintiff's credit file was a mixed file.

Plaintiff filed her Complaint on March 27, 2009, against Defendant and then-Defendant Financial Recoveries. Plaintiff eventually moved to amend her Complaint to remove Financial Recoveries, which had settled, and to add allegations for conduct after March 27, 2009.  See Motion for Leave to File Amended Complaint, ECF No. 32.  The Court granted-in-part and denied-in-part Plaintiff's motion, granting Plaintiff's dismissal of Financial Recoveries and denying addition of allegations post-dating March 27, 2009.  See Order, Aug. 18, 2010, ECF No. 55.  In that interim, Defendant filed a motion for partial summary judgment on all of Plaintiff's claims except for one of her negligence claims under § 1681e(b).  The Court denied this motion.  See Order, Nov. 29, 2010, ECF No. 59.

After five days of trial, the jury returned a verdict in favor of Plaintiff on her claim for negligent violation of § 1681e(b) in the amount of $10,000.  Defendant now moves for a Renewed Judgment as a Matter of Law.[2]  Plaintiff moves for a New Trial.  Both motions are fully briefed and ripe for disposition.

---

[2]   Defendant properly preserved its Renewed Motion for Judgment as a Matter of Law by moving for a Judgment as a Matter of Law

## III. STANDARDS OF REVIEW

A.   <u>Rule 50 Motion for Judgment as a Matter of Law</u>

In the aftermath of a jury trial, a court may grant a motion for judgment as a matter of law if it determines that there was no "legally sufficient evidentiary basis for a reasonable jury to have found for a particular party on an issue," and that, without a favorable finding on that issue, the party cannot maintain his claim under controlling law.  Fed. R. Civ. P. 50(a)(1).  In determining whether to grant judgment as a matter of law, the court "must view the evidence in the light most favorable to the non-moving party, and determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.'"  <u>Glenn Distribs. Corp. v. Carlisle Plastics, Inc.</u>, 297 F.3d 294, 299 (3d Cir. 2002) (quoting <u>Mosley v. Wilson</u>, 102 F.3d 85, 89 (3d Cir. 1996)).  Indeed, a court may grant judgment as a matter of law "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which

at the conclusion of Plaintiff's case.  <u>See</u> Trial Tr. vol. 3, 78:20-21, May 19, 2011; <u>see also</u> Fed. R. Civ. Pro. 50(b).

a jury reasonably could find liability." LePage's Inc. v. 3M, 324 F.3d 141, 145-46 (3d Cir. 2003) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).

In this endeavor, "[t]he court may not weigh evidence, determine the credibility of witnesses or substitute its version of the facts for that of the jury." Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 691 (3d Cir. 1993). Rather, the Court may grant a Rule 50 motion only "if upon review of the record it can be said as a matter of law that the verdict is not supported by legally sufficient evidence." Id. at 691-92; see also LePage's, 324 F.3d at 145-46 ("[R]eview of a jury's verdict is limited to determining whether some evidence in the record supports the jury's verdict."); Glenn Distribs., 297 F.3d at 299 (stating that "[t]he standard for granting summary judgment under Rule 56 'mirrors the standard for a directed verdict under [Fed. R. Civ. P.] 50(a)'") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

Upon the renewed motion of a party, Rule 50(b) allows the trial court to enter judgment as a matter of law at the conclusion of a jury trial notwithstanding a jury verdict for the opposing party. Such judgment may be entered under Rule 50(b) "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury

8

might reasonably afford relief." <u>Trabal v. Wells Fargo Armored Serv. Corp.</u>, 269 F.3d 243, 249 (3d Cir. 2001).  In deciding whether to grant this "sparingly invoked remedy," the court must "refrain from weighing the evidence, determining the credibility of witnesses, or substituting [its] own version of the facts for that of the jury." <u>Marra v. Phila. Housing Auth.</u>, 497 F.3d 286, 300 (3d Cir. 2007) (internal citations and quotation marks omitted).

      B.   <u>Rule 59 Motion for New Trial</u>

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1).  The decision whether to grant a new trial following a jury verdict is within the discretion of the district court and such requests are disfavored. <u>E.g.</u>, <u>Williamson v. Consol. Rail Corp.</u>, 926 F.2d 1344, 1353 (3d Cir. 1991).

The Court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold.  It must first determine whether an error was made in the course of the trial, and then it must determine "whether that error was so prejudicial that refusal to grant a new trial would be

inconsistent with substantial justice." Farra v. Stanley-
Bostitch, Inc., 838 F. Supp. 1021, 1026 (E.D. Pa. 1993)
(Robreno, J.) (internal citations and quotation marks omitted);
see Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 133
(3d Cir. 1965) ("If the evidence in the record, viewed from the
standpoint of the successful party, is sufficient to support the
jury verdict, a new trial is not warranted merely because the
jury could have reached a different result.").


IV.  DISCUSSION

          The Court will address Defendant's motion for a
Renewed Judgment as a Matter of Law ("JMOL") first.  Then, the
Court will consider Plaintiff's Motion for a New Trial.


     A.  Defendant's Motion for Renewed Judgment as a Matter of
         Law

          Defendant contends that it is entitled to a JMOL
because the evidence is insufficient to support the jury verdict
finding Defendant liable for "negligently fail[ing] to comply
with its duty to follow reasonable procedures to assure maximum
possible accuracy of the information contained on Plaintiff's
credit reports from March 27, 2007 to March 27, 2009."  Def.'s
Mot. for J. Matter of L. 1.

Defendant moves for a JMOL only as to the jury verdict that it negligently violated § 1681e(b).  In pertinent part, § 1681e(b) requires CRAs to follow "reasonable procedures to assure maximum possible accuracy" when preparing consumer reports.  "Negligent noncompliance with § 1681e(b), consists of the following four elements: '(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.'"  Cortez v. Trans Union, L.L.C., 617 F.3d 688, 708 (3d. Cir. 2010) (quoting Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996)).  The only element relevant to Defendant's motion is whether the inaccurate credit report was the result of "[D]efendant's failure to follow reasonable procedures to assure maximum possible accuracy."  Id.

"Reasonable procedures are those that a reasonably prudent person would undertake under the circumstances.  Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy."  Philbin, 101 F.3d at 963 (alterations, citations, and quotations marks omitted).  Under § 1681e(b) the standard is "maximum possible

11

accuracy," which is more "than merely allowing for the possibility of accuracy." Cortez, 617 F.3d at 709.  Moreover, the "reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" Id. (quoting Sarver v. Experian Info. Solutions, 390 F.3d 969, 971 (7th Cir. 2004)).

 

    1.  Burden of Proof

       There is much debate between the parties as to what is Plaintiff's burden of proof.  In the context of the quantum of evidence necessary to defeat a motion for summary judgment, the Third Circuit provides the following three approaches: (1) "that a plaintiff must produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures;" (2) "that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy;" or (3) "that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed." Philbin, 101 F.3d at 965.  Since this pronouncement in Philbin, the Third Circuit has never adopted any one of the three burdens.  See Cortez, 617 F.3 at 710; Schweitzer v. Equifax Info. Solutions L.L.C., 441 F. App'x. 896, 903 (3d. Cir.

12

2011).  Nor will this Court choose between the three options
because even under the most stringent option (1), the Court will
deny Defendant's motion.

## 2.  Sufficiency of the Evidence

Defendant contends that the evidence before the jury
was insufficient to conclude that it did not follow reasonable
procedures to assure maximum possible accuracy of Plaintiff's
credit report.  Plaintiff, on the other hand, asserts that there
was sufficient evidence for a jury to find that Defendant did
not follow reasonable procedures to assure maximum possible
accuracy in her credit report.  Viewing the evidence of record
in the light most favorable to Plaintiff, the non-moving party,
the Court finds that there was sufficient evidence for a jury to
conclude Defendant negligently violated § 1681e(b).

### a.  Applicable Law

Regarding arguments of insufficient evidence, the Third
Circuit directs:

> Such a motion should be granted only if, viewing the
> evidence in the light most favorable to the nonmovant
> and giving it the advantage of every fair and
> reasonable inference, there is insufficient evidence
> from which a jury reasonably could find liability.  In
> determining whether the evidence is sufficient to
> sustain liability, the court may not weigh the

13

    evidence, determine the credibility of witnesses, or
    substitute its version of the facts for the jury's
    version.

Lightning Lube, 4 F.3d at 1166 (internal citations omitted).

"Entry of judgment as a matter of law is a sparingly invoked

remedy . . . ."   Marra, 497 F.3d at 300 (internal quotation

marks omitted).


              b.   Analysis

         Defendant argues that a loan from Wilmington Trust

submitted to Defendant was the cause of the mixing of

Plaintiff's and non-party Teresa Price's credit files, and that

it followed reasonable procedures when it included the

Wilmington Trust loan document on Plaintiff's credit file.

Moreover, Defendant also argues that Plaintiff's previous

disputes over errors on her credit history were insufficient to

require Defendant to place a "Do Not Merge" tag on Plaintiff's

credit file.   Finally, Defendant argues that the evidence of

record shows that the cost-benefit of preventing Plaintiff's

mixed-file requires the Court to find in its favor.   The Court

rejects each of Defendant's arguments.


                              14

i.    Wilmington Trust report error

Defendant argues that the cause of Plaintiff's mixed file was an inaccurate loan transaction provided to Defendant by the Wilmington Trust Corporation in February of 2007.  And, because Wilmington Trust was a reliable source of information, Defendant's inclusion of this information on Plaintiff's credit file did not offend § 1681e(b).  Wilmington Trust provided Defendant with information about a loan with the name Teresa L. Price, located at 820 Westview Terrace, Dover, Delaware, and a social security number with the last four digits of '3274.[3]  See Trial Tr. vol. 3, 108:5-110:16.  It is undisputed that this Teresa Price was not Plaintiff.  Yet, when Defendant produced a credit report on Plaintiff on October 6, 2008, pursuant to an inquiry from Discover Card, Plaintiff's credit history mixed with non-party Teresa Price's[4] credit history and both histories were on that report.  Defendant contends that it was this erroneous Wilmington Trust report that caused the mixing of Plaintiff's and non-party Teresa Price's credit files.  And

_____

[3]    Plaintiff's address at one time was also 820 Westview Terrace, Dover, Delaware.  The last four digits of her social security number, however, are '7273.  Trial Tr. vol. 3, 110:8-12.

[4]    Non-party Teresa Price is also named Teresa L. Webb.  Thus, the record reflects both of her names throughout.

that, because the original source of this now mixed file was
Wilmington Trust, a source that Defendant had no reason to doubt
its accuracy, Defendant's procedures were reasonable to ensure
maximum possible accuracy in Plaintiff's credit report.

In support of this argument, Defendant relies upon
Sarver v. Experian Info. Sys., 390 F.3d 969, 972 (7th Cir.
2004).  In Sarver, the defendant received information from a
bank that stated that the plaintiff's account was subject to a
bankruptcy proceeding.  Id. at 970.  While that was incorrect
information, the court held that merely because the defendant
produced a report with an inaccuracy because it was provided by
a third-party cannot, without some notice of either that
inaccuracy or the unreliability of a reporting creditor,
precipitate liability.  Id. at 972.  Thus, so long as the
defendant received the information from a presumptively reliable
source, it cannot be said to have not followed reasonable
procedures to assure maximum possible accuracy without some
notice that the information was inaccurate.  Id. (internal
citations omitted).  A contrary ruling would place an
affirmative duty on the defendant to investigate any credit
anomaly.  Id.  Such an affirmative duty is not only impractical,
but also not required under the FCRA.  Id.

16

In this case, Defendant suggests that because
Wilmington Trust is a presumptively reliable source of
information, it had no reason to doubt the accuracy of the
Wilmington Trust loan information or to not include it within
Plaintiff's credit file.  Plaintiff does not contend she
provided notice of the effects of the mixed file until after a
March 12, 2009, consumer report provided to Wilmington Trust in
response to Plaintiff seeking a car loan for her son.  See Pl.'s
Br. in Opp'n to Def.'s Mot. for Renewed J. as Matter of L. 8-9
(detailing disputes lodged in 2005, 2007, and 2009, but not
including discussion of the Wilmington Trust loan) [hereinafter
Pl.'s JMOL Br.].  Thus, at no time before the consumer reports
at issue in this case, ending on March 12, 2009, did Plaintiff
place Defendant on notice that it should not have added the
Wilmington Trust loan account to Plaintiff's credit history.[5]

    While Defendant's theory is consistent with Sarver, it
does not save its motion.  The jury had sufficient evidence to

---

[5]    That is not to say that Plaintiff did not on several
occasions report to Defendant that there were credit accounts on
her credit report that were not hers.  See infra, at
IV(2)(b)(ii).  Nonetheless, with respect to the particular
Wilmington Trust loan account Defendant cites, Plaintiff did not
notify Defendant of this inaccuracy until after March 12, 2009,
when she discovered that Defendant had mixed her credit file
with non-party Teresa Price's credit file.  See Pl.'s Trial Ex.
P-4, at TU-285.

find, under the standards in the Third Circuit, that before
Defendant added the Wilmington Trust loan to Plaintiff's
account, Defendant should have placed a "Do Not Merge" tag on
Plaintiff's file.  If Defendant had placed the "Do Not Merge"
tag on Plaintiff's credit file earlier, the Wilmington Trust
loan would not have caused the mixing of Plaintiff's and non-
party Teresa Price's credit files.

### ii.  Record of Plaintiff's previous disputes with Defendant

The parties do not dispute that Defendant, from 2007
to 2009 produced inaccurate credit reports about Plaintiff.
What the parties do dispute is whether such inaccuracies were
the result of Defendant failing to follow reasonable procedures
to assure maximum possible accuracy.  Under the most stringent
standard in the Third Circuit, to succeed Plaintiff must show
that a credit report was inaccurate and must also produce some
additional quantum of evidence that demonstrates a failure to
follow reasonable procedures.  See Philbin, 101 F.3d at 965.
Plaintiff meets this standard here because Plaintiff produced
sufficient evidence for a jury to conclude that Defendant should
have placed a "Do Not Merge" tag on Plaintiff's credit file

18

before March 27, 2009, the ending date for damages.  See Trial

Tr. vol. 5, 81:12-17, May 23, 2011.

Even before the time when Defendant admits that it

merged Plaintiff and non-party Teresa Price's credit histories,

Plaintiff disputed the accuracy of her report on several

occasions.  Specifically, on October 21, 2005, Plaintiff

disputed credit accounts from Capital Credit Services,

Washington Mutual Financial, Key Bank #1, and Key Bank #2.

Pl.'s Trial. Ex. 4, at 73-78, 85-90.  Plaintiff alleged that all

of these accounts did not belong to her.  Defendant inquired

with the credit providers to verify the ownership of the

accounts.  Capital Credit Services and Washington Mutual

verified that those accounts belonged to Plaintiff.  Id.  On the

other hand, Defendant deleted both Key Bank accounts because

they did not belong to Plaintiff.  With respect to these

accounts, Key Bank did not inform Defendant how they determined

that the accounts did not belong to Plaintiff, but only

indicated that the accounts should be deleted as not belonging

to Plaintiff.  Id.

Plaintiff again disputed the ownership of several

accounts on April 30, 2007.  Plaintiff contented that credit

accounts from Capital Credit Services, Financial Recoveries, The

CBE Group Inc., CompuCredit Corp., and Washington Mutual did not

belong to her.  Pl.'s Trial. Ex. 5, at 159-69.  Capital Credit and Financial Recoveries verified Plaintiff's ownership of their respective accounts by date of birth, name, and SSN.  Defendant deleted The CBE Group and CompuCredit accounts, however, because both the CBE Group and CompuCredit informed Defendant that the accounts did not belong to Plaintiff.[6]  Id. at 159-70.

Finally, Plaintiff disputed a bankruptcy that was on her account on March 12, 2009.  This bankruptcy was not Plaintiff's and was ultimately deleted.  The realization of this bankruptcy, however, resulted in the discovery that Plaintiff's credit history was mixed with non-party Teresa Price's and culminated in this lawsuit.

In sum, this evidence of record shows that on multiple occasions, even before the Wilmington Trust report error of February 2007, Plaintiff disputed that accounts on her credit report that did not belong to her and those facts were verified.[7]

_____

[6]   Defendant also deleted the Washington Mutual account, but the record does not indicate that it was because it did not belong to Plaintiff.  Defendant contends that the Washington Mutual account was too old to verify and, thus, deleted.  Def.'s Br. in Supp. of Motion for J. as Matter of L. 26 [hereinafter Def.'s Opening JMOL Br.].

[7]   To be sure, Plaintiff disputed several accounts that did belong to her, yet the fact remains that some were not.  Under the JMOL standard, the Court may not weigh the evidence or determine credibility, but must only look to the sufficiency of the evidence.  Marra, 497 F.3d at 300.

Yet, Defendant did not take steps to prevent reoccurrence of Plaintiff's mistaken identity even though Defendant could have required all accounts submitted under Plaintiff's name to have an exact social security match by using the "Do Not Merge" function.

Defendant argues that, even though Plaintiff brought the matter to its attention, Plaintiff's disputes did not meet its criteria for placing the "Do Not Merge" tag on Plaintiff's file.  According to Defendant's protocol, "Do Not Merge" status requires not only a dispute that an account is not the consumer's, but also further verification that some other identifying information of the consumer's does not match the identifying information on the credit account, such as social security number, address, date of birth, or name.  See Def.'s Opening JMOL Br. 25; id. Ex. 19.

In Plaintiff's case, there is no dispute that she did not provide further verification to Defendant about why the credit accounts were not hers.  Moreover, the creditors themselves did not inform Defendant of their reasons why Defendant should delete those accounts, such as that the credit accounts did not match on Plaintiff's address, SSN, etc.  Defendant argues that because there was no additional identifying information, it was on "notice of nothing" regarding

21

the possibility that Plaintiff's account was mixed.   Def.'s
Opening JMOL Br. 27.

Defendant, in essence, argues that its procedures and
criteria for placing an account in "Do Not Merge" status are
reasonable to ensure maximum possible accuracy, and Plaintiff
did not meet its criteria.   Whether or not Defendant's protocol
under of the circumstances of this case satisfies § 1681e(b)'s
requirement that Defendant use reasonable procedures to assure
maximum possible accuracy was the issue presented to the jury.
And, the jury found against Defendant on that issue.[8]

The evidence before the jury showed that, on multiple
occasions and over several years, Plaintiff disputed the
accuracy of her credit report.   Defendant deleted accounts
because they were verified as not being Plaintiff's accounts.
When a preventive option is available, i.e., placing the "Do Not
Merge" tag on Plaintiff's file, but Defendant does not use that
option when it is reasonable to conclude it should, Plaintiff
has met its burden to produce sufficient evidence for a §

_____

[8]   To the extent that Defendant argues that because it followed
its own protocol correctly when deciding not to place a "Do Not
Merge" tag on Plaintiff's credit file, it followed reasonable
procedures to assure maximum possible accuracy as a matter of
law, Defendant is wrong.   Evidence that Defendant followed
protocol is probative, but not conclusive, that Defendant met
its duty under § 1681e(b).

1681e(b) claim under the most stringent burden of proof from
Philbin.   Cf. O'Brien v. Equifax Info. Servs., L.L.C., 382 F.
Supp. 2d 733, 737 (E.D. Pa. 2005) (Brody, J.) (finding that "[a]
trier of fact could find that a reasonably prudent person would
undertake such automated cross-referencing whenever there is an
account reported as being included in bankruptcy").   Thus, when
viewing the facts in a light most favorable to Plaintiff, there
was sufficient evidence for the jury to conclude that
Defendant's failure to use the "Do Not Merge" tag on Plaintiff's
account before March 12, 2009, was not a reasonable method to
ensure maximum possible accuracy of Plaintiff's credit report.[9]

Defendant puts forth two additional arguments that the
Court also rejects.   Defendant argues that the jury result in
this case fails to strike the appropriate cost-benefit balance
between the costs associated with ensuring 100 percent accurate

---

[9]   Defendant provides a parade of horribles if the Court denies
its motion.   In particular, Defendant argues that if the Court
denies its motion it will be liable for whenever a consumer
disputes his or her identity and Defendant does not place a "Do
No Merge" tag on the credit file.   Defendant is incorrect and
misapprehends the Court's function under a JMOL.   The Court may
only look into the sufficiency of the evidence to determine if
this particular jury on this particular set of facts could
conclude that Defendant's procedures were reasonable to assure
maximum possible accuracy.   And, under the particular facts of
this case, the Court concludes that there was sufficient
evidence to support the jury's verdict.   Whatever effect such a
conclusion may have on other cases is not the Court's concern.
Accordingly, the Court rejects Defendant's argument.

credit reports and the benefits to consumers for such reports.
It is true that, when assessing reasonableness, the jury must
"weigh[] the potential harm from inaccuracy against the burden
of safeguarding against such inaccuracy." Philbin, 101 F.3d at
963. Yet, Defendant is incorrect that there is insufficient
evidence to support the jury's finding on this point. As
explained above, Plaintiff on multiple occasions pointed out
that there were credit accounts on her credit report that were
not hers. Considering this evidence, and the ease of marking a
file "Do Not Merge," a reasonable jury could conclude that the
potential harm from an inaccurate credit report containing
delinquent accounts not attributable to Plaintiff outweighed the
burden on Defendant to place a "Do Not Merge" tag on Plaintiff's
credit file.[10]

---

[10]    Defendant contends that Cushman v Trans Union Corp.
requires the Court to make this cost-benefit analysis about
whether the procedures to ensure maximum possible accuracy were
reasonable. Cushman v. Trans Union Corp., 115 F.3d 220, 224-25
(3d Cir. 1997). Defendant is wrong. Cushman was a case
involving a claim for failure to reinvestigate under § 1681i.
There, the Court was comparing the level of due diligence a CRA
must perform under § 1681e(b) and § 1681i and stated that "when
one goes from the § 1681e(b) investigation to the § 1681i(a)
reinvestigation, the likelihood that the cost-benefit analysis
will shift in favor of the consumer increases markedly.
Judgment as a matter of law, even if appropriate on a § 1681e(b)
claim, thus may not be warranted on a § 1681i(a) claim." Id. at
225. Because the Court was assessing the standard for a §
1681i(a) claim, the statement about the cost-benefit analysis
vis-à-vis a § 1681e(b) claim is dictum. Nonetheless, it is not

Finally, Defendant argues throughout its brief that
the Federal Trade Commission ("FTC"), pursuant to the Fair and
Accurate Transaction Act §§ 318 and 319, see Pub. L. 108-159,
117 Stat. 1952 (2003), produced several reports to Congress
about the state of the credit reporting industry and such
reports should persuade the Court to grant its motion.
Specifically, the FTC reports discuss accuracy and completeness
in consumer credit files.  See Report to Congress on FACTA §§
318, 319, i (December 2004), available at
http://www.ftc.gove/reports/facta/041209factarpt.pdf.  The FTC
reports conclude that uniform rules governing how CRAs match
credit files of consumers are unwise.  Id. at iii.  Such rigid
rules would prevent the flexibility needed by the CRAs to cope

---

irrelevant.  The trier of fact, in its reasonableness
determination, must weigh the harm from an inaccurate report
versus the burden of preventing such a report.  To contend,
however, that Cushman requires such balancing and that the Court
may, as a matter of law, grant JMOL based on this "cost-benefit"
analysis is incorrect.  The "cost-benefit analysis" is part of
the reasonableness determination for the trier of fact.
Philbin, 101 F.3d at 963.  And, under the JMOL standard, the
Court only assesses whether there was sufficient evidence of
record to support the jury's conclusion.  Trabal, 269 F.3d at
249.

Even if the Court must conduct a "cost-benefit" analysis
independently, in this case the Court finds that balancing the
relative ease of implementing the "Do Not Merge" tag against the
benefit that tag would have to prevent the mixing Plaintiff's
credit file would warrant finding in favor of Plaintiff in this
case.

with the many inevitable typographical and other scrivener errors that are part and parcel to credit applications.  <u>Id.</u> at ii-iv.  Thus, Defendant contends, the Court should conclude, as the FTC did, that any more than partial matching is not required to follow reasonable procedures to assure maximum possible accuracy.  As partial matching resulting in the mixing of Plaintiff and non-party Teresa Price's credit histories, the Court must conclude that Defendant met its obligation on § 1681e(b).

Defendant seems to believe that the FTC report to Congress is binding authority upon this Court.  That is not the case.  This is a report to Congress based upon policy considerations, not an interpretation of a statute, rulemaking, or other agency action to which the Court must give deference.[11]  <u>See, e.g.</u>, <u>Mead</u>, 533 U.S. at 234-35.  Moreover, Defendant points

---

[11]   The cases Defendant cites suggesting that the FTC report is entitled to substantial weight are inapposite here.  <u>See</u> Def.'s Opening JMOL Br. 11 (citing <u>Chevron, U.S.A., Inc., v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984); <u>A-1 Credit & Assurance Co. v. Trans Union Credit Info. Co.</u>, 678 F. Supp. 1147, 1151 (E.D. Pa. 1988)).  Those cases involve an agency interpreting statutory language.  Such interpretations, under well-recognized administrative law principles, are entitled to varying degrees of authoritative weight.  <u>See</u> <u>United States v. Mead Corp.</u>, 533 U.S. 218, 234-35 (2001).  The FTC's report to Congress, on the other hand, is an investigative and informative report.  It does nothing to interpret or otherwise suggest how § 1681e(b) should be enforced or what standards should be used.

to no new congressional or administrative action resulting from these studies with respect to § 1681e(b) that would bind the Court or require deference.  In short, while informative, these reports have no binding authority upon the Court to conclude that Defendant's matching procedures are sufficient to discharge its duty under § 1681e(b).  That question is in the province of the jury under the circumstances of a particular case.  Even considering these reports as informative and instructive, the Court cannot conclude that, when viewing the facts in a light most favorable to Plaintiff, the jury had insufficient evidence to conclude that Defendant failed to follow reasonable procedures pursuant to § 1681e(b).  Therefore, Defendant's Motion for Renewed Judgment as a Matter of Law must be denied.

        B.   <u>Plaintiff's Motion for New Trial</u>

        Plaintiff moves for a new trial based upon Defense Counsel's alleged misconduct in withholding evidence and during Plaintiff's cross-examination at trial.  Plaintiff also moves for a new trial based on several of the Court's evidentiary rulings during trial and on the Court's denial of two jury instructions.  The Court will deny Plaintiff's motion.[12]

---

[12]   Effective advocacy requires the exercise of judgment in selecting between many potentially meritorious arguments.  In

1.   Defense Counsel's Withholding of Evidence

Plaintiff first argues that Defense Counsel withheld a credit report for Plaintiff, dated May 20, 2009.  Next, Plaintiff argues that Defense Counsel withheld records relating to Plaintiff's address posting onto a separate credit account in February of 2007.  Pl.'s Br. in Supp. Mot. for New Trial 3, July 15, 2011, ECF No. 121 [hereinafter Pl.'s New Trial Br.].

a.   Applicable Law

Plaintiff's Motion for a New Trial because Defendant allegedly withheld evidence is best analyzed under Federal Rule of Civil Procedure 60(b)(3).  That Rules provides that a Court may "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . ."  Fed. R. Civ. P. 60(b)(3).  Evidence to support a new trial under Rule 60(b)(3) must be "clear and convincing."  Brown v. Pa. R.R. Co., 282 F.2d 522, 527 (3d Cir. 1960).  Moreover, a new trial

---

this case, Plaintiff's Counsel seems to have disregarded this exercise.  He has advanced them all indiscriminately and with equal force.  These arguments have not been helpful.

should not be granted unless the movant establishes not only that the adversary engaged in some misconduct, but also that this misconduct "prevented the moving party from fully and fairly presenting his case." Stridiron v. Stridiron, 698 F.2d 204, 207 (3d Cir. 1983).

### b.   Analysis

Plaintiff first argues that Defense Counsel withheld an important credit report of Plaintiff's.  Next, Plaintiff argues that Defense Counsel withheld documentary evidence that Plaintiff's address appeared on non-party Teresa Price's credit file before Defendant combined the two files.  The Court addresses each argument in turn and finds both unavailing.

### i.   Withheld credit report

Plaintiff's first basis for a new trial is the withholding of a credit report that she claims would have benefitted her case.  The document in question was a computer screen shot and credit report for Plaintiff dated May 20, 2009. Its existence was known to Plaintiff only during the last minutes of trial testimony.  After Plaintiff's objection and request for production, Defendant duly produced the document. This withheld report contained several errors, namely it

contained two places of employment where Plaintiff never worked, "Country Eaterie" and "Confident Cleaners," and a $1,354 charge-off account through HSBC.  See Pl.'s New Trial Br. Ex. C. Plaintiff argues that this document, which Defendant should have produced during discovery, is additional evidence of Defendant's unreasonableness.  The withheld credit report is also evidence indicating Defendant's willful conduct because even after Plaintiff filed suit it "continued to post another person's information on Plaintiff's report."  Id. at 4.

Defendant does not argue that it did not produce this report.  It argues that the report was irrelevant to Plaintiff's claims.  Plaintiff's Complaint only contained allegations up to the date of filing, March 27, 2009, not post-filing events. Moreover, the Court denied Plaintiff's attempt to amend her Complaint to include such post-filing events.  Order, Aug. 18, 2010, ECF No. 55.  Furthermore, argues Defendant, it did produce a credit report dated July 13, 2009.  This report contained the same inaccuracies that Plaintiff now argues were critical to her case.  Namely, that Plaintiff had jobs at Country Eaterie and Confident Cleaners and an HSBC account in the amount of $1,354. See Def.'s Br. in Opp'n to Pl.'s Mot. for New Trial Ex. B, Aug. 15, 2011, ECF No. 130 [hereinafter Def.'s New Trial Br.].  Thus, Plaintiff already had the information before trial that she now

claims would have been key to success on her willfulness claim under § 1681(e)(b).

It is uncontested that Defendant did not produce the May 20, 2009, report before trial.  Moreover, Defendant is incorrect that such report would be irrelevant to Plaintiff's willfulness claim.  In determining what is relevant under Federal Rule of Evidence 401, the Court looks to what issues the parties raised in their respective pleadings and are in dispute. And, while Plaintiff's Complaint did not include allegations after March 27, 2009, Defendant's continued production of inaccurate reports was still relevant to Plaintiff's claim of a willful violation of § 1681e(b).  A jury could view this post-Complaint erroneous report as circumstantial evidence of Defendant's willful violation of § 1681e(b).  See Trial Tr. vol. 5, 81:12-17 ("You may consider defendant's conduct prior to March 27, 2007 and after March 27, 2009 only to determine whether defendant negligently and/or willfully violated the Fair Credit Reporting Act during the time period beginning on March 27, 2007 and ending March 27, 2009.").

Nonetheless, these conclusions do not rise to the level of prejudice needed for a new trial.  Indeed, the Court finds that in reality no quantum of prejudice resulted from this document's non-production.  The relevant errors pointed to by

Plaintiff in the May 20, 2009, report were also in the July 13, 2009, report that Defendant timely produced to Plaintiff. Accordingly, Plaintiff could have used the substance of the July 13, 2009, document, which was marked as a Defense trial exhibit D-75, to argue the same points she is now pressing upon the Court.   Therefore, Plaintiff's first basis for a new trial is insufficient to show that Defense Counsel's misconduct prevented her from fully and fairly presenting her case.

ii.   Withheld trade line address screen

Plaintiff's second basis for a new trial is Defense Counsel's alleged withholding of record evidence that showed that Plaintiff's address was produced on a credit report of non-party Teresa Price.   At trial, Defendant elicited testimony from Defense witness Lynn Romanowski, an employee of Defendant.   Ms. Romanowski gave testimony regarding how Plaintiff's credit file and non-party Teresa Price's file came to be combined.   During this testimony, Ms. Romanowski discussed non-party Teresa Price's credit file before Defendant combined her credit file with Plaintiff's credit file.   Ms. Romanowski stated non-party Teresa Price's file must have matched Plaintiff's address because, without that match, Defendant would have never combined non-party Teresa Price's credit file with Plaintiff's credit

file.  <u>See</u> Trial Tr. vol. 3, 110:20-25.  Plaintiff argues that
Defendant never produced non-party Teresa Price's credit file in
this pre-combined state.  And, Defendant's failure to produce
this document prejudiced Plaintiff because she was unable to
effectively cross-examine Ms. Romanowski.

Defendant argues that even if there was such a
document, Plaintiff's document requests did not encompass non-
party Teresa Price's files.[13]  Moreover, Plaintiff, who knew that
this was a mixed-file case, should have moved to compel when she
received none of non-party Teresa Price's files in discovery.

The evidence of record shows that Ms. Romanowski did
refer to some document or screen shot that Defendant did not
produce to Plaintiff.  Specifically, Ms. Romanowski testified at
trial that there were records of non-party Teresa Price's credit
file before Defendant combined her information with Plaintiff's.

---

[13]   The Court takes no position on whether Plaintiff's document
requests were sufficiently broad to encompass production of non-
party Teresa Price's credit history.  Moreover, the Court notes
the paradoxical premise of Plaintiff's argument.  During
discovery, Plaintiff's Counsel sent letters to third parties
Defendant subpoenaed.  <u>See</u> Def.'s Motion for Sanctions 1, ECF
No. 18.  These letters advised those third parties not to comply
with Defendant's subpoena because, <u>inter alia</u>, the subpoenas
sought the private information of non-party Teresa Price without
her consent.  <u>Id.</u> Ex. C.  Plaintiff's Counsel's letters cannot
be reconciled with its argument for a new trial because of the
alleged non-production of non-party Teresa Price's credit
history.

<u>See</u> Trial. Tr. vol.3, 107:3-108:23 ("THE WITNESS:  What I was able to do in researching this is, I was able to look at a view of these files prior to the combine . . . ."). Defendant argues that such records were unavailable, and that Ms. Romanowski stated that Defendant would not have kept data from credit transmissions from 2007.  To the contrary, Ms. Romanowski stated that she reviewed Plaintiff's files in preparation for the litigation and indeed was able to see non-party Teresa Price's file before Defendant combined non-party Teresa Price's file with Plaintiff's file.  <u>Id.</u>  It is this file, non-party Teresa Price's file before Defendant combined it with Plaintiff's, which Plaintiff now argues Defendant did not produce.  And, indeed, there is no argument that Defendant did not produce this document.[14]

        Nonetheless, its non-production does not require a new trial.  Discovery misconduct can require a new trial, but only if Plaintiff was deprived of fully and fairly presenting her case.  <u>Stridiron</u>, 698 F.2d at 207.  In this case, it is unclear what probative value the fact that Plaintiff's address appeared

---

[14]   It is unclear from the record whether Defendant actually knew of the existence of the screen shot before Ms. Romanowski's testimony.  Defendant asserts that this record does not exist anymore, and that Ms. Romanowski was only testifying from memory and with her knowledge of how Defendant's matching procedure works.  Def.'s New Trial Br. 7.

on non-party Teresa Price's credit file had.  This case was
about what information was on Plaintiff's credit file and
whether that information was accurate.  Moreover, the Court
cannot conclude that, even if this document had some probative
value, that Plaintiff was deprived of fairly presenting her
case.

        A new trial under Rule 60(b) requires "more than a
showing of potential significance of the new evidence."  Bohus
v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) (internal citations
and quotation marks omitted).  Plaintiff offers nothing more
than speculation about the probative value of this document, for
example, that its non-production "prevented Plaintiff's counsel
from properly cross-examining Ms. Romanowski."  Pl.'s New Trial
Br. 7.  Or, that Defendant must have had other probative
evidence that it did not produce.  Id.  Without more, the Court
cannot conclude that Plaintiff has shown more than a potential
significance of this new evidence.  Accordingly, the non-
production of non-party Teresa Price's credit history cannot be
grounds for a new trial.

2.   <u>Defense Counsel's Misconduct During Examination</u>
     <u>of Plaintiff</u>

Plaintiff also moves for a new trial based upon
Defense Counsel's alleged misconduct during his cross-
examination of Plaintiff.  Specifically, Plaintiff argues that
Defense Counsel, on several occasions, attempted to introduce
evidence in contravention of the Court's motion in limine Order.


a.   <u>Applicable Law</u>

Similar to Plaintiff's Motion for a New Trial because
Defendant allegedly withheld evidence, Plaintiff's Motion for a
New trial based upon Defendant's misconduct during his cross-
examination of Plaintiff is best analyzed under Federal Rule of
Civil Procedure 60(b)(3).  That Rules provides that a Court may
"relieve a party or its legal representative from a final
judgment, order, or proceeding for the following reasons: . . .
(3) fraud (whether previously called intrinsic or extrinsic),
misrepresentation, or misconduct by an opposing party; . . . ."
Fed. R. Civ. P. 60(b)(3).  Evidence to support a new trial under
Rule 60(b)(3) must be "clear and convincing."  <u>Brown v. Pa. R.R.</u>
<u>Co.</u>, 282 F.2d 522, 527 (3d Cir. 1960).  Moreover, a new trial
should not be granted unless the movant establishes not only
that the adversary engaged in some misconduct, but also that

36

this misconduct "prevented the moving party from fully and
fairly presenting his case."  Stridiron v. Stridiron, 698 F.2d
204, 207 (3d Cir. 1983).

                    b.   Analysis

          Plaintiff first argues that Defense Counsel attempted
to introduce facts regarding the settlement of Plaintiff's
lawsuit with Financial Recoveries and also Plaintiff's complaint
against Equifax and Experian filed in New Jersey (the "New
Jersey Complaint").[15]  Defendant did indeed attempt to ask
Plaintiff about her settlement with Financial Recoveries.  Trial
Tr. vol. 2, 85:15-16, May 18, 2011.  The Court sustained an
objection by Plaintiff.  Id. at 85:17-18.

          Plaintiff next argues that Defense Counsel attempted
to undermine the Court's in limine Order by introducing evidence

---

[15]     The Court's in limine Order stated:

          Plaintiff's motion to preclude all references to
     Plaintiff's settled lawsuit against Experian Information
     Solutions, Inc., Equifax Information Service, LLC, and
     previous claims brought against Financial Recoveries is
     **DENIED** in so far as Defendant is permitted to discuss
     whether such lawsuits were pending at the same time as this
     suit, whether those lawsuits involved claims relating to
     credit, and whether those lawsuits affected Plaintiff's
     mental state.

Order ¶ 1, Feb. 8, 2011, ECF No. 84 (emphasis in original).

of a February 2007 Wilmington Trust loan transaction without using the Wilmington Trust letter detailing that transaction.[16] In particular, Plaintiff argues that Defense Counsel used the fact that Wilmington Trust denied Plaintiff an automobile loan to argue that Plaintiff's credit was "terrible." Trial Tr. vol. 2, 107:22-118:3. Moreover, Plaintiff argues that Defense Counsel similarly contravened the Court's in limine Order by introducing evidence of a CitiFinancial transaction during Plaintiff's testimony. The Court also precluded use of the CitiFinancial transaction letter in its in limine ruling, which related to a home refinancing and an automobile loan. See Order ¶ 6, Feb. 8, 2011.

Plaintiff also argues that Defendant improperly introduced a Credit Plus document, which provided Plaintiff's credit score in 2008 and was not identified as a trial exhibit. Defendant originally only used the Credit Plus document to refresh Plaintiff's recollection about her credit score, but Defendant eventually did admit this document into evidence as

---

[16]   The Court excluded use of this Wilmington Trust letter, denying Plaintiff a loan for a car in 2007, in its in limine ruling. See Order ¶ 6, Feb. 8, 2011 ("Plaintiff's motion to exclude five exhibits is **GRANTED**. The exhibits include: (1) 2/5/02 Wilmington Trust dealer Credit Decision; (2) 2/6/07 Letter from Wilmington Trust to Plaintiff; (3) 2/6/07 Trans Union Credit Report to Wilmington Trust; (4) 3/24/08 CitiFinancial Credit Report; and (5) CitiFinancial Documents re: 3/08 Application for Auto Loan." (emphasis in original)).

impeachment evidence.  Yet, Plaintiff argues, this document was irrelevant to this case and was not a proper impeachment document for Plaintiff's cross-examination.

Plaintiff further argues that Defense Counsel attempted to introduce other third-party documents during his examination of Plaintiff, including another credit score document and a document memorializing a conversation between a Wilmington Trust agent and a used car salesmen about Plaintiff's credit.  The Court sustained Plaintiff's objections to the introduction of these documents.  Plaintiff argues that Defense Counsel's attempted introduction of these documents, and the sidebars that followed, prejudiced Plaintiff to the extent that cure of this prejudice, when considered as a whole with Defense Counsel's other misconduct, requires a new trial.

Defendant contends that, with respect to the Financial Recoveries settlement, that Plaintiff misled the jury about the outcome of that case by stating that Plaintiff filed an amended complaint to dismiss Financial Recoveries.  Defense Counsel's questions about settlement were only to correct Plaintiff's misstatement.  Moreover, with respect to the New Jersey complaint against Equifax and Experian, Defendant argues that it did not contravene the Court's in limine Order.  Plaintiff's case-in-chief contained a letter that stated Plaintiff had

39

corresponded with all credit agencies and informed those agencies that another Teresa L. Price was on her credit report. Thus, Defendant argues that its questions about the New Jersey Complaint, which went unanswered, were appropriate in light of Plaintiff's testimony that she contacted Equifax and Experian about potential mistaken identity.

Defendant also contends that its discussions of the 2007 Wilmington Trust loan and the CitiFinancial transaction were appropriate. Specifically, Plaintiff herself on direct testimony referred to both of these transactions. Therefore, Defendant's cross-examination about such information was proper.

The Court finds that Plaintiff fails to show that Defendant's conduct sufficiently prejudiced Plaintiff's case to support granting a new trial. First, as Plaintiff notes, several of Plaintiff's arguments relate to objections that the Court sustained. In essence, Plaintiff contends that by attempting to circumvent the Court's in limine ruling and requiring Plaintiff to object, Defendant biased Plaintiff by implying that Defendant had more evidence that it was able to show. Be that as it may, the jury did not hear this evidence and the conjecture about the possibility that the jury took Defense Counsel's objections to heart by either not finding liability or having reduced damages cannot support granting a

new trial.[17]  Cf. Benson v. Am. Exp. Isbrandtsen Lines, Inc., 478
F.2d 152, 155 (3d Cir. 1973) (holding that speculation cannot
support granting new trial).

With respect to the Wilmington Trust document, which
the Court deemed inadmissible in its in limine ruling,
Plaintiff's argument also fails.  The contents of the Wilmington
Trust document indicated that Plaintiff did not get a car loan
because the "collateral value or type is not sufficient."  Pl.'s
New Trial Br. 11.  The Court's in limine ruling stated that this
Wilmington Trust document was inadmissible because it would
cause jury confusing and be a waste of time.  See Mot. in Limine
Hr'g Tr. 29:17-23, Feb. 4, 2011.  At trial, Defense Counsel did
not attempt to introduce this document.  Defense Counsel, on
cross-examination, questioned Plaintiff about her attempted
purchase of a car in 2007.  Defendant's cross-examination of
Plaintiff focused on whether or not the car dealer informed

---

[17]    Indeed, the Court specifically instructed the jury
concerning objections as follows:

Objections to questions by the lawyers are not
evidence.

The lawyers have an obligation to their clients
to make objections when they believe evidence being
offered is improper under the Rules of Evidence, and
you should not be influenced by the objections or by
the Court's ruling on those objections.

Trial Tr. vol. 1, 46:4-10, May 17, 2011.

Plaintiff that she was not approved for the loan because of her "terrible" credit.  See Trial Tr. vol. 2, 106:13-108:13; 116:11-117:5.  Plaintiff herself on direct testified to the details of the 2007 car loan transaction.  See Trial Tr. vol. 2, 26:19-27:24.  Plaintiff opened the door to cross-examination about this same transaction.  Thus, Defendant did not circumvent the Court's in limine Order.[18]

Next, Plaintiff argues that Defendant also circumvented the Court's exclusion of the CitiFinancial loan transaction.  The CitiFinancial documents were credit reports from 2008 that discussed Plaintiff's creditworthiness.  Similar to the Wilmington Trust document from 2007, the CitiFinancial loan transaction was from 2008 and the Court ruled that this document would cause confusion and be a waste of time under Rule 403.  See Order ¶ 6, Feb. 8, 2011; Mot. in Limine Hr'g Tr. 29:17-23.  Yet, Plaintiff introduced her own evidence from December 2007 through June of 2008, regarding adverse action notices she received from CardMember Service.  See Trial Tr.

---

[18]   To be sure, the Court stated in its in limine ruling that Defendant was to first allow the Court to consider whether Plaintiff had opened the door before introducing evidence of the 2007 car loan transaction.  See Mot. in Limine Hr'g Tr.29:24-30:3.  Despite ignoring this statement, which the Court now admonishes Defense Counsel for doing, Plaintiff's direct testimony indicates that the door was opened to cross-examine Plaintiff about this 2007 loan transaction.

vol. 2, 14:11-17, 15:24-25, 16:1-4, 17:1-12.  Thus, Plaintiff

herself opened the door to discussion of her credit worthiness

during 2008.  Moreover, the extent of Defense Counsel's

questions about this time period, specifically Plaintiff's

credit history from years 2007 and 2008, was limited vis-à-vis

the CitiFinancial document.  Defense Counsel asked Plaintiff one

question about the CitiFinancial transaction:

> Q: Then any other credit you tried to get in 2008?
> A: Not that I recall.
> Q: Okay.  Perhaps if you could look again at the document
> that I just handed you, does this refresh your recollection
> as to any attempt you made to get credit?
> A: Yes, that was an online application, I was looking at
> refinancing my house.
> Q: Okay.  Where you able to refinance your house?
> A: I don't recall that we finalized it one way or the
> other, I did not refinance my house.

Id. at 123:24-124:8.  Thus, any introduction of the

CitiFinancial loan transaction was appropriate cross-examination

because Plaintiff had opened the door on direct by discussing

her creditworthiness from 2008.  Moreover, even if this

introduction was improper, its limited introduction did not

prevent Plaintiff from fairly presenting her case.

Plaintiff next argues that the Court's admission of

the Credit Plus document, which provided Plaintiff's credit

score, was improper.  Defense Counsel originally sought to use

this document to refresh Plaintiff's recollection about what her

credit score was around the time Plaintiff attempted to buy a car in 2007.  Id. at 117:4-118:6.  Plaintiff objected to its use as an exhibit and the Court sustained that objection, but allowed Defendant to use the Credit Plus document to refresh Plaintiff's recollection.  See id. at 119:6-9.  Then, after further testimony from Plaintiff, Defendant also sought to introduce the Credit Plus document as impeachment evidence.  The Court allowed its admission over Plaintiff's objection, but stated Plaintiff was free to object if Defendant used the document improperly.  See id. at 131:2-6.  Plaintiff made no such objection.

 The Court's ruling on the admissibility of the Credit Plus document stands.[19]  Defendant's cross-examination shows that Plaintiff discussed several collection accounts on her credit report.  Earlier, Plaintiff testified that it was her opinion that her credit scores were not bad.  See id. at 121:23-24.  Thus, Defendant introduced the Credit Plus document to impeach Plaintiff's testimony because Plaintiff could not "understand why her score was so bad when she looked at the [credit]

---

[19] While Plaintiff captions the Court's admissibility of the "Credit Plus" document under Defense Counsel's misconduct, it is better viewed as a challenge to the Court's evidentiary ruling. The Court will not grant a new trial based upon its evidentiary ruling unless the Court erred and such error affects Plaintiff's "substantial rights."  Fed. R. Civ. P. 61.

report." Id. at 128:21-22.  That is, if she now states she had

all of these collections on her credit report, does she still

believe that her credit scores were not bad?  See id.  Further,

Defense Counsel also used the Credit Plus document to impeach

Plaintiff about whether or not Experian and Equifax ever placed

a "Derogatory public record or collection filed" on her account.

Id. at 132:22-134:6.  Plaintiff testified that they had not, but

the Credit Plus document indicated that both Experian and

Equifax placed the notice of "Derogatory public record or

collection filed" on Plaintiff's credit report.  Id.  Thus, this

was a proper impeachment document and Plaintiff failed to object

to its use after it was admitted into evidence.  Accordingly,

the Court's admissibility ruling stands and cannot be the basis

for a new trial.[20]

Plaintiff also renews her motion for a mistrial and

for sanctions for Defense Counsel's conduct pursuant to 28

U.S.C. § 1927.  For the reasons stated above with respect to

Plaintiff's Motion for a New Trial, the Court will deny

Plaintiff's motion for a mistrial.  Moreover, as explained

above, much of Defense Counsel's conduct was proper.  To the

---

[20]    Even if the Court was incorrect, Plaintiff has not shown
that such an error would affect Plaintiff's "substantial
rights."  Fed. R. Civ. P. 61.

extent that it was not, Plaintiff has failed to show that
Defense Counsel acted with willful bad faith as required in this
Circuit for sanctions under § 1927.  See In re Prudential Ins.
Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 188
(3d Cir. 2002).  Accordingly, the Court will deny Plaintiff's
motion for sanctions.

### 3.   Defense Counsel's Misconduct During Closing Statement

Plaintiff argues that Defense Counsel misstated law
and facts and argued facts not of record during his closing
statement.

#### a.   Applicable Law

"The prohibition against use in argument of evidence
not in the record is straightforward."  Reed v. Phila.,
Bethlehem & N.E. R.R. Co., 939 F.2d 128, 133 (3d Cir. 1991).
Indeed, a court may grant a new trial when counsel's closing
argument refers to evidence not in the record or other
extraneous matter if the court finds there is a "reasonable
probability of influencing the verdict."  Ayoub v. Spencer, 550
F.2d 164, 170 (3d Cir. 1977).  The number of improper remarks,
whether they be of law or fact, is important in assessing

whether counsel's conduct prejudiced a jury verdict.  Fineman v.
Armstrong World Indus., Inc., 980 F.2d 171, 208 (3d Cir. 1992).

While this is the general standard, in this case
Plaintiff never objected to Defense Counsel's closing statement
at trial.[21]  Therefore, Plaintiff waived her right to move for a
new trial on this ground, and the Court will not grant a new
trial unless Defense Counsel's misconduct resulted in a
miscarriage of justice.  Wilson v. Vt. Castings, Inc., 170 F.3d
391, 395-96 (3d Cir. 1999).


          b.  Analysis

First, Plaintiff argues that the following statement
had no basis in law or fact:

> Look, I told you this was a case of mistaken identity.
> You had mistaken identity on my report and you didn't
> put the "Do not merge" tag on it.  Well, that claim
> was false, ladies and gentlemen.

Trial Tr. vol. 5, 43:6-10.  Plaintiff argues that Plaintiff's
claim was not false and that this statement was therefore a
misstatement of fact.  Next, Plaintiff argues that Defense

---

[21]  Despite Plaintiff's claim that Defense Counsel's made
"several prejudicial statements contrary to law and to the facts
of record," Plaintiff sat mute and allowed Defense Counsel's
closing statement to proceed to conclusion.  Pl.'s New Trial Br.
19.  Fairness dictates that a party cannot remain silent in the
face of such errors and take a chance on a verdict only to later
complain that the statements resulted in prejudice to her case.

Counsel stated that Plaintiff's credit limit was cut because "they [the credit card company] had loaned her too much money." Id. at 45:18-22.  Plaintiff contends that the record evidence does not support the statement that the credit card company cut Plaintiff's credit limit because they had "loaned her too much money."  Id.  The only evidence of record was that Plaintiff's credit card company lowered her credit limit after reviewing a credit report from Defendant.

Further, Plaintiff argues that Defense Counsel misstated the substantive law for a willful violation of the FCRA by omitting that Defendant could be liable for a willful violation if it acted recklessly.  In particular, Defense Counsel stated that a willful violation of the FCRA requires that Defendant "knowingly and intentionally violate[] the law . . . ."  Id. at 50:20-24.  Plaintiff further argues that Defense Counsel made another misstatement of fact.  Specifically, Defense Counsel gave a narrative where he stated that Plaintiff, although she received collection calls and notices pertaining to non-party Teresa Price, failed to follow-up and inquire as to whether the collection calls and notices were not hers.  Indeed, Defense Counsel stated that Plaintiff found an "easy way to deal" with the collections by simply denying responsibility. Plaintiff argues that Defense Counsel "was simply inventing

48

'facts' in order to cast Plaintiff in a negative light and bias the jury against her."  Pl.'s New Trial Br. 18.

Finally, Plaintiff argues Defense Counsel discussed evidence about the New Jersey lawsuit in contravention of this Court's motion in limine Order.  Plaintiff cites to the following passage of Defense Counsel's closing statement in support:

> Shortly after that she goes over to New Jersey to file a lawsuit, sues Equifax, sues Experian, says all these things that were wrong that really weren't wrong, that really were hers, say that this is not my identify for these things.

Id. at 55:24-56:3.  Plaintiff contends that there was no record evidence to support this statement, and that Defense Counsel was only trying to cause bias against Plaintiff.

Defendant, on the other hand, responds that Defense Counsel's closing argument was proper.  First, with respect to Defense Counsel's reference that this was a case of mistaken identity, Defendant argues that the full passage of the closing argument provides context to that statement.  In particular, Defendant contends it did not argue that Plaintiff's files were not mixed with non-party Teresa Price's file, but only that Plaintiff failed to sufficiently inform Defendant of this mistaken identity before the files were mixed.

49

Next, Defendant argues that Plaintiff's challenge to the veracity of Defense Counsel's statement that Plaintiff's credit card company had loaned Plaintiff too much money is meritless.  A credit card company cuts a credit limit when it determines that it loaned too much money to the consumer. Further, Defendant argues that any misstatement of the law should not result in a new trial.  Defense Counsel admits that it did not state that it would be liable if it was only reckless in its FCRA violation.  Nevertheless, Defendant argues that the jury verdict would have been no different had it included the word "reckless" in its recitation of the law.

Defendant also argues that the evidence supported its closing argument that related to the collection calls to Plaintiff.  Plaintiff testified that she did nothing to confirm that she was or was not the one responsible for the debts subject to collection.  Finally, regarding the statement about the New Jersey suit, Defendant argues that the record supported such statement.  Namely, that Plaintiff's New Jersey Complaint identified a Financial Recoveries inaccuracy that was, in fact, Plaintiff's account.

Under the heightened "miscarriage of justice" standard, Defense Counsel's closing statements do not require a new trial.  First, the evidence supported Defense Counsel's

50

statement: "[This was a] case of mistaken identity.  You had mistaken identity on my report and you didn't put the "Do not merge" tag on it.  Well, that claim was false, ladies and gentlemen."  Trial Tr. vol. 5, 43:6-10.  One of Defendant's defenses was that Plaintiff never placed Defendant on notice, pursuant to its internal protocol, that Plaintiff's file was mixed.  Thus, Defendant's closing statement was argument that Plaintiff did not place Defendant on sufficient notice that Plaintiff's report was mixed.  The "claim was false" vis-à-vis meeting Defendant's protocol for placing a "Do Not Merge" tag on Plaintiff's credit file.  See id. at 43:9-11 ("Well, that claim was false, ladies and gentlemen.  There was no reason to put the tag on.  There was no information on that file."); id. at 43:24-44:2 ("And it was that nothing that the plaintiff was complaining about indicated any good cause to put that "Do no merge" tag on the file.").  Thus, Defense Counsel did not argue facts not in the record.

    Moreover, the record also supports Defendant's statement that Plaintiff's credit card company reduced her credit because it lent her too much money.  Plaintiff does not dispute that her credit card company reduced her credit limit after viewing a credit report produced by Defendant.  Pl.'s New Trial Br. 17.  Plaintiff only argues that the reason for her

credit reduction was that Plaintiff's credit report showed a "serious delinquency, and public record or collection file." Id. Ex. K, at 2.  While this may have been the reason for reducing Plaintiff's credit limit, it is not inaccurate to state that Plaintiff's credit card company determined that it had loaned Plaintiff too much money.  Indeed, a credit card is a revolving loan.  And, it is plain that by reducing a credit limit, a credit card company is reducing the size of funds available — that is, the company is reducing the amount of money available for the consumer to borrow on credit.  Further, it is clear from the evidence that, upon receiving Plaintiff's credit report, her credit card company reduced her credit limit — or the amount of money it had loaned Plaintiff.  Therefore, Plaintiff's credit card company loaned her too much money.

At bottom, Plaintiff's argument comes down to nothing more than semantics.  Plaintiff asks the Court to differentiate between reducing a credit limit and loaning out too much money. There is no difference in this case.  Defense Counsel's statement about Plaintiff's credit card company loaning her too much money does not merit a new trial.

Further, the record supported Defense Counsel's narrative that Plaintiff found an "easy way to deal" with her collection calls and did not inquire into whether Plaintiff

52

herself was responsible for the collected accounts.  See Trial Tr. vol. 5, 53:18-54:7.  Plaintiff testified as follows: "Q: Did you try to find out who they were collecting for before you swore that it wasn't yours?  A: No, I didn't.").  Trail Tr. vol. 2, 148:24-25, 149:1-2.  Thus, the record evidence supported Defense Counsel's statement and that statement cannot be the basis for a new trial.

Defendant's statement that it did not "knowing and intentionally violate[] the law," although an incomplete statement of the law, did not prejudice the jury.  Plaintiff is correct that an FCRA willfulness claim may lie if a defendant acts recklessly, see Safeco Inc. Co. of Am. v. Burr, 551 U.S. 47, 57-58 (2007), and Defendant's closing remark did not discuss this relevant law.  Yet, the Court's jury charge cured whatever prejudice Defendant's misstatement may have caused.  That charge stated, "Now the term wilful.  The term wilful means an omission or failure to do an act one, voluntarily and knowingly with a purpose of disobey or disregard of the law, or with reckless disregard of a known statutory duty under the Fair Credit Reporting Act."  Trial Tr. vol. 5, 78:18-22.  Thus, the Court properly instructed the jury that Defendant could be liable for a willful violation of the FCRA if it acted recklessly.

53

Accordingly, the Court finds Defendant's misstatement of the law did not prejudice Plaintiff.[22]

Finally, it seems that Defense Counsel did stretch the facts when it stated that Plaintiff went to "New Jersey to file a lawsuit, sues Experian, says all these things that were wrong that really weren't wrong, that really were hers, says that this is not my identity for these things."   Id. at 55:24-56:3. Defendant points to only one account, the Financial Recoveries account, that Plaintiff incorrectly stated in the New Jersey Complaint was not hers, but indeed did belong to Plaintiff. Yet, Defendant's closing statement refers to "all these things that were wrong that really weren't wrong."   Id.   This statement is in the plural and indicates that Plaintiff's New Jersey Complaint was rife with errors.   That was not the case.[23] Defendant only cites to one account in the New Jersey Complaint

---

[22]   Furthermore, the Court also instructed the jury that, although counsel may have referred to the applicable law during the case, they were to take the law from the Court and the Court only.   Trial Tr. vol. 5, 61:4-9.

[23]   The Court notes that in other proceedings Defendant indicated that Plaintiff made three misstatements in her New Jersey Complaint indicating accounts that were not hers, but in reality were her accounts.   See Mot. in Limine Hg'r Tr. 4:2-5. Yet, Defendant only points to one of Plaintiff's misstatements in its opposition to Plaintiff's Motion for a New Trial.   Def.'s New Trial Br. 20.   The Court will analyze Plaintiff's Motion based upon Defendant's assertion in its briefing.

in which Plaintiff erred.  This misstatement is insufficient for the Court to conclude that it would prejudice the jury in any meaningful way.  And, indeed it does not rise to the level of a miscarriage of justice.  Nor is the combination of any of Defendant's misstatements or omissions sufficient to rise to the level of a miscarriage of justice.[24]

### 4.   Alleged Court Error in Evidentiary Rulings

Plaintiff also points to several evidentiary rulings by the Court that she contends were in error.  These errors, Plaintiff contends, sufficiently prejudiced her case and the only remedy is a new trial.  The Court finds Plaintiff's contention unavailing.

### a.   Applicable Law

Where the asserted basis for a new trial involves a matter originally within the trial court's discretion — for example, evidentiary rulings — the court has more latitude to grant a motion for a new trial.  Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993).  The court's inquiry in evaluating

---

[24]   While spirited advocacy is encouraged, and although no error singularly or collectively mandates a new trial in this case, the Court cautions Defense Counsel to modulate his advocacy and remain faithful to the facts and law of the case.

a motion for a new trial on the basis of trial error is twofold. It must first determine whether an error was made in the course of the trial, and then it must determine "whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice."  Farra v. Stanley-Bostitch, Inc., 838 F. Supp. 1021, 1026 (E.D. Pa. 1993) (Robreno, J.) (internal quotations and citations omitted); see Gebhardt v. Wilson Freight Forwarding Co., 348 F.2d 129, 133 (3d Cir. 1965) ("If the evidence in the record, viewed from the standpoint of the successful party, is sufficient to support the jury verdict, a new trial is not warranted merely because the jury could have reached a different result.").

b.   Analysis

Plaintiff breaks the Court's alleged errors down into two distinct categories.  First, its failure to allow Plaintiff to introduce various evidence that showed Defendant's willful violation of the FCRA.  Second, allowing Defendant to introduce any evidence of Plaintiff's New Jersey Complaint.  The Court addresses each in turn and finds that neither argument is successful.

> i.   Not permitting Plaintiff to introduce
>      evidence of willful violation of the
>      FCRA

Plaintiff argues that the Court prevented her from introducing evidence that Defendant willfully violated the FCRA, thus resulting in the unfavorable jury verdict on that claim. Plaintiff identifies three specific rulings to support her argument.  First, the Court sustained Defendant's objections to Plaintiff's introduction of evidence about the annual volume of mixed-file disputes as categorized by Defendant.  Plaintiff argues that Defendant's witness Ms. Romanowski gave a "sworn statement in another FCRA matter that Trans Union processes hundreds of thousands of disputes annually as mixed-file disputes according to its own criteria."  Pl.'s New Trial Br. 20.  Plaintiff argues that the Court's exclusion of questions regarding this prior statement was incorrect; Ms. Romanowski was permitted to testify about the amount of data Defendant processes generally.

Second, and similarly, Plaintiff sought to elicit certain testimony from Defense witness Steven Newnom. Specifically, Plaintiff sought testimony on the number of confirmed mixed files within Defendant's priority processing department in Chester, Pennsylvania, where Mr. Newnom works. Mr. Newnom previously gave a sworn statement that Defendant

keeps statistics about the number of confirmed mixed files. Defendant kept these records pursuant to a 1992 Consent Order that Defendant entered into with the attorneys general of seventeen states.  The Court did not permit Plaintiff to examine Mr. Newnom about such records.

Third, Plaintiff argues that the Court's in limine ruling to preclude introduction of the 1992 Consent Order was in error.  Briefly, Plaintiff argues that the 1992 Consent Order between Defendant and seventeen attorneys general is the same as a settlement agreement.  Under Federal Rule of Evidence 408, a party may introduce a settlement agreement to show prior notice. That is exactly what Plaintiff wished to do with this Consent Order, that is, to show that Defendant was on prior notice of the magnitude of the mixed-file problem.  And, therefore, in Plaintiff's view, the Consent Order would show Defendant's willful violation of the FCRA in this case.  Plaintiff argues that such evidence has been introduced in another FCRA case against Equifax.  See Drew v. Equifax Info. Servs., L.L.C., No. 07-726, 2010 WL 5022466, at *6, 12 (N.D. Cal. Dec. 3, 2010).

These three pieces of evidence, Plaintiff argues, were highly relevant to her FCRA willfulness claim.  The evidence shows that Defendant knew about the "systematic problem with mixed files" for a very long time before the instant case.

Pl.'s New Trial Br. 21.  Plaintiff contends that Defendant's argument to the jury was that it receives millions of pieces of data about consumers and that this mixed file was just one "defect" and not a sign of willfulness.  Id. at 22.

Defendant argues that the Court's exclusionary rulings were correct.  If the Court had allowed Plaintiff to introduce this evidence, it would have "create[d] a trial within a trial." Def.'s New Trial Br. 20.  Thus, argues Defendant, the Court properly excluded this evidence under Federal Rule of Evidence 403 in that the probative value was substantially outweighed by the likely hood of jury confusion or delay.  Finally, Defendant argues that the Court's exclusion of the 1992 Consent Order was proper.  That Consent Order specifically stated it was not to be used by any third-party in any litigation for any purpose against Defendant.  The Court respected the terms of that Consent Order.

Plaintiff's first two arguments are similar, to wit: she asks the Court's reconsideration of its trial rulings on the admissibility of evidence.  This evidence, both from Ms. Romanowski and Mr. Newnom, concerned the statistics of Defendant's confirmed mixed files.  The Court sustained Defendant's objections on relevancy grounds, stating, "we're hearing this case, we're not hearing the hundreds of other cases

59

that may be, so limit your questions to this case, please."
Trial Tr. vol. 2, 209:1-3.

Plaintiff's arguments still fail.  Plaintiff sought to
introduce evidence about confirmed mixed files.  Such files are
those that Defendant itself confirmed were mixed.  In this case
there is no dispute that Defendant did not confirm Plaintiff's
file was mixed until after litigation began.  Plaintiff's theory
of the case was that Defendant should have confirmed her file
was mixed, but, as the record evidence showed, Defendant
believed that Plaintiff did not meet the required protocol for
such confirmation.  This evidence of previous confirmed mixed
files from Ms. Romanowski and Mr. Newmon had little bearing on
whether Defendant should have confirmed that Plaintiff's file
was indeed mixed.  Plaintiff has not put forth any evidence or
argument that whatever protocol that was used for these
"hundreds of thousands" of other cases was the same for
Plaintiff's case.  Pl.'s New Trial Br. 20.  Therefore, there was
no way for a jury to know how these "hundreds of thousands" of
other cases were applicable to the protocol and notice for
Plaintiff's case.  The Court properly excluded this testimony as
irrelevant under Federal Rules of Evidence 402 and 403.[25]

---

[25]    Plaintiff argues that the Court allowed testimony about the
general amount of data Defendant receives.  Specifically, that

As to the reconsideration of the Court's in limine ruling on the admissibility of the 1992 Consent Order, the Court finds that the Consent Order's probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. That Consent Order was between seventeen attorneys general and Defendant.  Plaintiff sought to introduce the Order to show that Defendant had sufficient notice of the problems of mixed-files and, therefore, Plaintiff could establish willfulness because Defendant knew the likelihood of the mixed-file problem.

The admissibility of Consent Orders in another proceeding is to be analyzed under Rule 408.  See Bowers v. Nat'l Collegiate Athletic Ass'n, 563 F. Supp. 2d 508, 535-36 (D.N.J. 2008) (applying Rule 408 to determine whether consent order admissible as evidence).  Rule 408 provides: "furnishing .

---

Defendant receives millions of credit events and that Plaintiff's situation is just one isolated defect in Defendant's data processing system.  Thus, the Court's exclusion of Plaintiff's statistical evidence was inconsistent.  Yet, Defendant sought to introduce general information about its business.  Plaintiff sought to introduce specific statistics to allow the jury to infer that her mixed file case was similar to other mixed-file cases.  Plaintiff laid no foundation for why these other cases were similar to Plaintiff's case.  There could have been different protocol for determining a mixed-file case in the cases involved in the Consent Order.  Without such foundation, this evidence would unduly confuse the jury and be a waste of time.  Accordingly, the Court properly found this evidence inadmissible.

. . a valuable consideration in compromising or attempting to compromise the claim," as well as "conduct or statements made in compromise negotiations regarding the claim," is "not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction . . . ." Fed. R. Evid. 408. "The purpose of Rule 408 is, of course, to encourage settlements and compromises of disputed claims, which would be discouraged if such evidence were admissible." Bowers, 563 F. Supp. 2d at 536.

Plaintiff did not seek to introduce the Consent Order into evidence as to issues of liability. Rather, Plaintiff sought to introduce the Order to establish notice. One court in this district held that Rule 408 does not encompass evidence of consent orders from prior actions offered to show notice. Bowers v. City of Phila., No. 06-3229, 2008 WL 5234318, at *6 (E.D. Pa. Dec. 12, 2008) (holding consent "decree" admissible to establish notice in a deliberate indifference case). In Bowers, the court pointed out that "[t]he Advisory Committee's Notes to the 2006 Amendments make clear that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice." Id. (internal citations omitted).

While notice is an appropriate use of a consent order, this particular Consent Order had an explicit provision that it was not to be used for any purpose, absent modification by the Northern District of Illinois.  The Consent Order states, "[o]ther than with respect to a proceeding or action in this court by any of the State(s) against Trans Union, neither this Order nor any provision thereof shall be offered or received in evidence against or on behalf of Trans Union in any action or proceeding of any kind or nature . . . ."  See Def.'s Br. in Supp. of Motion in Limine 6, ECF No. 76.

The Court declines to resolve this apparent conflict between Rule 408 and the terms of the Consent Order because it finds that the probative value of this evidence is substantially outweighed by the likelihood of jury confusion.  This Consent Order was from 1992 and Plaintiff failed to lay a foundation for why this Consent Order would be applicable to her case.  Delving into the details of this Consent Order poses perhaps just as many questions as it answers.  Thus, the admission of the Consent Order would "take us too far afield" from this case requiring the parties to discuss the "specific circumstances which led to the entry of that decree."  Mot. in Limine Hr'g Tr. 58:2-4.  The Court will not now grant Plaintiff a new trial based upon the exclusion of this evidence.  Plaintiff has not

63

shown that, even if the Court erred, such error would affect her "substantial rights" to the extent that the Court needs to grant a new trial to remedy this error.  See Fed. R. Civ. P. 61.

### ii. Permitting Defendant to introduce evidence of Plaintiff's lawsuits against Equifax, Experian, and Financial Recoveries

Plaintiff also argues the Court erred when it permitted limited introduction of evidence about Plaintiff's other suits against Equifax, Experian, and Financial Recoveries. The Court's in limine Order allowed Defendant to "discuss whether such lawsuits were pending at the same time as this suit, whether those lawsuits involved claims relating to credit, and whether those lawsuits affected Plaintiff's mental state." Order ¶ 1, Feb. 8, 2011.  Plaintiff argues that the Court permitted Defendant to introduce irrelevant and prejudicial evidence.  In particular, Plaintiff contends that under the FCRA there are no set-offs or contributions.  See Sloane v. Equifax Info. Servs., L.L.C., 510 F.3d 495, 500-01 (4th Cir. 2007). Therefore, Plaintiff argues that whatever settlement Plaintiff received from Equifax, Experian, and Financial Recoveries was irrelevant to this case because the jury could not use those amounts to set-off Plaintiff's damages.  Moreover, courts hold

64

that there is "no right to indemnification or contribution for
FCRA claims."  Pl.'s New Trial Br. 24.  Accordingly, any
information regarding Plaintiff's other suits and subsequent
settlement was irrelevant and only introduced to suggest that
Plaintiff was overly litigious.

Defendant, on the other hand, argues that the Third
Circuit in Cortez "recognized the relevance of other CRA's
reports to emotional distress damages."  Def.'s New Trial Br.
21.  Furthermore, Defendant never asked for any set-off in
damages.  Therefore, the Court's ruling correctly allowed
evidence of Plaintiff's emotional distress and how Plaintiff's
previous lawsuit affected her emotional distress.  Thus,
Plaintiff's arguments are irrelevant.

As to Plaintiff's arguments of set-off or
indemnification, the jury instructions discussed neither.  See
Trial Tr. vol. 5, 80:17-84:15.  Nor did Defendant seek any set-
off.  Def.'s New Trial Br. 21.  Thus, Plaintiff cannot seriously
argue that the admission of this evidence affected her
substantial rights.  The admission did not.  Moreover, the Court
properly allowed the limited use of Plaintiff's New Jersey
Complaint to facilitate Defendant's causation arguments as to
mental distress pursuant to Cortez.  See Cortez, 617 F.3d at 719
(allowing damages for mental distress).  Accordingly, Plaintiff

65

failed to show that the Court erred in its evidentiary rulings. And, even if the Court did error, Plaintiff failed to show how that error affected her substantial rights.

     5.   <u>Alleged Court Error in Denying Plaintiff's Jury Instructions</u>

Plaintiff's penultimate ground for a new trial is the Court's denial of two jury instructions, proposed jury charges numbers 14 and 15. <u>See</u> Pl.'s Proposed Points for Charge 15-16, ECF No. 69.

     a.   <u>Applicable Law</u>

"A party is entitled to a jury instruction that accurately and fairly sets forth the current status of the law." <u>Douglas v. Owens</u>, 50 F.3d 1226, 1233 (3d Cir. 1995); <u>see also</u> <u>McPhee v. Reichel</u>, 461 F.2d 947, 950 (3d Cir. 1972) ("It is the responsibility of the trial judge to provide the jury with a clear and accurate statement of the law . . . ."). Additionally, "[n]o litigant has the right to a jury instruction of its choice, or precisely in the manner and words of its own preference." <u>Douglas</u>, 50 F.3d at 1233; <u>see also</u> <u>Heller Int'l Corp. v. Sharp</u>, 974 F.2d 850, 860 (7th Cir. 1992) (stating that district court has

substantial discretion with respect to specific wording of
jury instructions and need not give proposed instruction if
essential points are covered by those that are given);
Anderson v. Branen, 17 F.3d 552, 559-60 (2d Cir. 1994)
(providing that litigant is entitled to instruction that
correctly reflects applicable law and sufficiently covers
essential issues, but party is not entitled to prescribe
exact language of that charge).

b.   Analysis

Plaintiff's proposed jury charge number 14 provided,
in pertinent part:

> In an FCRA case, a person may recover for humiliation,
> embarrassment, and emotional distress based upon his
> or her own subjective testimony about his or her
> feelings.  He or she does not have to introduce expert
> medical or other testimony.  Cortez v. Trans Union,
> L.L.C., 617 F.3d 688, 719 (3d Cir. 2010).

Pl.'s Proposed Points for Charge 15.  Plaintiff argues that
she did not produce medical or psychiatric testimony, and
the jury did not know that Plaintiff could establish
emotional damages without such testimony.  Thus, Plaintiff
argues, "[a]lthough the jury could have believed that
Plaintiff's claim of emotional distress was worth only
$10,000, it is just as probable that the jury erroneously

67

concluded that Plaintiff did not meet her emotional distress burden . . . ."  Pl.'s New Trial Br. 26.

Proposed jury charge number 15 provided, in pertinent part, that the jury "may not assume that any other person, about whom you may have heard testimony, has to compensate the Plaintiff in this civil action for any harm that you found was substantially caused by the Defendant's conduct."  Pl.'s Proposed Points for Charge 16. Plaintiff argues that this charge was especially important in this case because the Court allowed Defendant to introduce evidence of Plaintiff's suits against Equifax, Experian, and Financial Recoveries.  Consequently, Plaintiff argues that the jury "could have erroneously thought that Plaintiff was already compensated for damages presented at trial by one or more other parties."  Pl.'s New Trial Br. 26.  Accordingly, Plaintiff seeks a new trial to cure these defects.

Defendant, in response, argues that, with respect to proposed charge number 14, the Court's charge did not suggest that Plaintiff had to present medical evidence to prove emotional damages.  Nor did Defendant argue as much. As to proposed charge number 15, Defendant argues that the Court instructed the jury that "[i]t is not necessary that

an act or failure to act be the sole or primary cause of
the damages." Trial Tr. vol. 5, 80:10-16. Thus, argues
Defendant, "the instructions to the jury clearly and
thoroughly explained the 'substantial factor' concept and
that Trans Union should be held liable for damages it
caused Plaintiff." Def.'s New Trial Br. 23.

  Plaintiff's first argument lacks merit.  In
pertinent part, the Court instructed the jury:

> You should also include each of the following items of
> damage that you decide that plaintiff is reasonably
> certain to sustain in the future, that is humiliation,
> embarrassment and mental distress.
>
> You must decide upon which, if any, of the items of
> damages have been proven by plaintiff based upon
> evidence and not upon speculation, guesses or
> conjecture.

Trial Tr. vol. 5, 82:12-19. Thus, the Court instructed the
jury that Plaintiff's emotional distress damages, if any,
must be proved by the admitted evidence.  Plaintiff's
testimony was of course admitted evidence.  Therefore,
nothing in the Court's charge to the jury precluded or even
suggested that the jury could not award Plaintiff emotional
distress damages based upon her own testimony or that
testimony of an expert was required.  Plaintiff offers no

support for her contention that the Court must state that
no medical testimony is required.[26]

Plaintiff argues, "although the jury could have
believed that Plaintiff's claim of emotional distress was
only worth $10,000, it is just as probable that the jury
erroneously concluded that Plaintiff did not meet her
emotional distress burden . . . ."  Pl.'s New Trial Br. 26.
This argument falls on its face.  To even assume that the
jury "erroneously concluded" anything, there must be some
predicate for that assumption; there must be some scintilla
of evidence that the Court suggested Plaintiff could not
prove emotional damages based upon only lay-person
testimony.  That is simply not the case here.

Plaintiff's argument boils down to wishing she
got the jury instruction she wanted, but the law does not
require that the Court provide an instruction that meets
with Plaintiff's approval.  The law only requires a "jury
instruction that accurately and fairly sets forth the
current status of the law."  Douglas, 50 F.3d at 1233.
Plaintiff has not argued that the Court misstated the law

---

[26]   To be sure, Cortez rejects an approach by the Fifth Circuit
requiring some corroborative evidence to show emotional damage.
Cortez, 617 F.3d at 720.  Yet, Cortez does not address whether
the jury instructions must affirmatively state as much.  Id.

in its charge to the jury.  Indeed, the Court did not
misstate the law.  Accordingly, Plaintiff's argument fails
and is an insufficient basis for a new trial.

Plaintiff's argument for proposed jury charge
number 15 is similarly flawed.  Plaintiff contends that by
not providing a "set-off" instruction, but allowing limited
introduction of Plaintiff's settled suits against Experian,
Equifax, and Financial Recoveries, the jury "could have
erroneously thought that Plaintiff was already compensated
for the damages presented at trial by one or more other
parties."  Pl.'s New Trial Br. 26.  Similar to Plaintiff's
argument regarding proposed charge number 14, there is
nothing in the Court's instruction that would have
suggested to the jury that it could set-off Plaintiff's
damages.[27]

At trial, Defendant did not ask for a set-off and
Plaintiff fails to point to any record evidence that
Defendant suggested to the jury to set-off damages.

---

[27]     Plaintiff contends that the Court, at the in limine
hearing, stated that potential prejudice for admission of
Plaintiff's New Jersey Complaint could be cured with a jury
charge.  Pl.'s New Trial Br. 26.  In actuality, the Court
adopted a wait-and-see approach.  The Court recognized that
Plaintiff had a concern about jury confusion, but decided to
wait until trial to see what would happen.  See Motion in Limine
Hr'g Tr. 9:17-24.

Indeed, Plaintiff fails to cite to any record evidence of how Defendant's introduction of Plaintiff's other lawsuits even suggested that Plaintiff's damages in this case should be set-off or otherwise reduced.  Accordingly, Plaintiff is not entitled to a new trial based on the Court's rejection of proposed jury charge number 15.

### 6.   Cumulative Effect of Errors

Plaintiff's final argument is that if any of her cited "errors" are insufficient, individually, for the Court to grant a new trial, when looking at the errors as a whole Plaintiff's case was sufficiently prejudiced to require a new trial.  Much like Plaintiff's other arguments, this also fails to carry the day.

As the Court stated above, many of Plaintiff's alleged errors, whether they were Defense Counsel's misconduct or evidentiary rulings, were not errors at all. To the extent that Defense Counsel's conduct was in error, these few errors are insufficient, when viewed as a whole, to affect Plaintiff's "substantial rights."  Fed. R. Civ. P. 61.

**V.    CONCLUSION**

For the reasons above, the Court will deny Defendant's motion for Renewed Judgment as a Matter of Law and deny Plaintiff's Motion for a New Trial.  An appropriate Order will follow.