IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERESA PRICE,                  :     CIVIL ACTION
                               :     NO. 09-1332
        Plaintiff,             :
                               :
        v.                     :
                               :
TRANS UNION, L.L.C., et al.,   :
                               :
        Defendants.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          MARCH 16, 2012


I.    **INTRODUCTION**

        Plaintiff Teresa Price ("Plaintiff") brought this

action against Defendant Trans Union, L.L.C. ("Defendant"),[1] a

national consumer reporting agency ("CRA").  Plaintiff alleged

violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681,

et seq. ("FCRA").  In particular, Plaintiff claimed Defendant

willfully or negligently violated the FCRA by failing to follow

reasonable procedures to assure the maximum possible accuracy of

information on Plaintiff's credit report, as required by FCRA.

---

[1]      As discussed herein, Plaintiff also brought her action
against  Defendant-Financial  Recoveries,  but  settled  her
dispute with it and dismissed Financial Recoveries from the
lawsuit.

See 15 U.S.C. § 1681e(b) (2006).  Additionally, Plaintiff claimed Defendant willfully and/or negligently violated the FCRA by failing to permanently correct inaccuracies in Plaintiff's credit file within thirty days of disputing such inaccuracies. See id. § 1681i.  The case eventually went to trial.  The jury returned a verdict for Plaintiff on her claim for negligent violation of § 1681e(b), with a damage award of $10,000.  After the conclusion of trial, Defendant moved to renew its motions for sanctions for Plaintiff's counsel's conduct during the course of litigation.  See Def.'s Renewed Mot. for Sanctions, ECF No. 123.  This motion is now fully briefed and ripe for disposition.  For the reasons that follow the Court will grant Defendant's motion in-part and deny it in-part.

## II.  BACKGROUND

As this Court has previously ruled on several motions that provide a rich account of the facts in this case, the Court will provide only the facts relevant to the instant motion. This renewed motion for sanctions relates to two separate instances that Defendant contends Plaintiff's Counsel, John Soumilas, interfered with third-party discovery.  Specifically, Defendant contends that it issued subpoenas to third parties seeking credit information about Plaintiff.  In turn, Mr.

Soumilas wrote letters to those third parties stating that Defendant's requests for documents were overly broad and sought private information of persons not in the instant suit.  Mr. Soumilas advised the third parties not to respond.[2]

Plaintiff claims that Defendant subpoenaed several business entities about information regarding Plaintiff, whose credit and financial information had been confused with another Teresa Price ("non-party Teresa Price").  Plaintiff alleges that Defendant did not include any explanation or clarification to

---

[2]    In pertinent part, these "Advice Letters" read as follows:

Please be advised that Plaintiff has waged an objection with Trans Union due to the extremely broad and intrusive nature of the requests in the subpoena. Plaintiff finds no legitimate basis for Trans Union to request highly private and financially sensitive information they seek with this subpoena including but not limited to billing and collection records. Billing histories have no relevance to Plaintiff's case.  Indeed, virtually all of the documents or information Trans Union seeks has no relevance to Plaintiff's case.

Since production of the documents and information requested in the subpoena would result in a significant intrusion upon the privacy of the relevant individual who is the target of this improper request, we feel compelled to advise your organization of these concerns and expect your cooperation in refraining from providing documents and information that would result in an impermissible and unnecessary invasion of privacy.

Def.'s Br. in Supp. Mot. for Sanctions Ex. C., at 8, Oct. 29, 2009, ECF No. 18 [hereinafter Def.'s First Br.].

these business entities that the information may relate to non-party Teresa Price and also included no authorization from non-party Teresa Price consenting to release her personal documentation.  Thus, Plaintiff argues, by sending the Advice Letters, Mr. Soumilas attempted to protect non-party Teresa Price's privacy interest.  Indeed, Plaintiff communicated these concerns before sending the Advice Letters.  <u>See</u> Pl.'s Br. in Opp'n to Def.'s Mot. for Sanctions Ex. A, at 2, Nov. 16, 2009, ECF No. 19 [hereinafter Pl.'s First Br.].  Yet, counsel did not reach an amicable resolution, and Mr. Soumilas felt the need to send the Advice Letters.

At that time, Defendant moved for sanctions against Mr. Soumilas for sending these letters, <u>see</u> Def.'s Mot. for Sanctions, Oct. 29, 2009, ECF No. 18, but the Court denied Defendant's motion without prejudice, deferring ruling upon sanctions until after completion of trial.  <u>See</u> Order ¶ 1, Jan. 20, 2010, ECF No. 30.  Nevertheless, the Court granted leave to re-subpoena those third parties that had not provided Defendant with the documentation it sought.[3]  <u>Id.</u> ¶ 1 n.1.

_____

[3]   As a result of Mr. Soumilas's Advice Letters, five of the nine subpoenaed third parties failed to initially respond to Defendant's subpoena, they eventually did after Defendant re-subpoenaed the unresponsive parties.  <u>See</u> Pl.'s Resp. in Opp'n to Def.'s Renewal of Mot. for Sanctions 5, ECF No. 129 [hereinafter Pl.'s Third Br.].

Defendant also moves for sanctions based upon Mr. Soumilas's conduct at the deposition of defense witness Catherine Ciprietti.  Ms. Ciprietti was an employee of a third-party witness, Financial Recoveries, a former Defendant in this case that settled with Plaintiff.[4]  At her deposition, Ms. Ciprietti brought several documents with her, though Plaintiff requested none in her subpoena.  One of these documents, named the "Green Bar" document, included information relating to the settlement between Plaintiff and Financial Recoveries.  Def.'s Br. in Supp. of Mot. for Sanctions 2, May 5, 2011, ECF No. 91 [hereinafter Def.'s Second Br.].  During the deposition, the existence of the Green Bar document came to light, and Ms. Ciprietti explained that certain contents of the document were subject to a confidentiality agreement between Plaintiff and Financial Recoveries.  Because of this agreement, Mr. Soumilas, on several occasions, instructed Ms. Ciprietti to consult an attorney before answering a question concerning the contents of the Green Bar document.  Defendant contends that Mr. Soumilas

---

[4]    Defendant included Ms. Ciprietti on the witness list after Financial Recoveries indicated that Ms. Ciprietti would be the witness on behalf of Financial Recoveries at trial.  As Plaintiff did not know that Ms. Ciprietti would be Financial Recoveries' representative during the discovery period, it sought leave to depose Ms. Ciprietti. The Court granted this request.

improperly instructed Ms. Ciprietti not to answer deposition questions.  Counsel for the parties disputed this point on several occasions during Ms. Ciprietti's deposition.  Defense Counsel, Timothy Creech, eventually terminated the deposition and moved for sanctions.  At the first day of trial, counsel for both parties provided oral argument related to Mr. Soumilas's conduct at Ms. Ciprietti's deposition.  The Court took the matter under advisement and will now rule on this matter as well.

**III. STANDARDS OF REVIEW**

Defendant cites to 28 U.S.C. § 1927 as authority for sanctions.  In addition, the Court has the inherent authority to sanction to control its own proceedings.

A.    Sanctions Under 28 U.S.C. § 1927

"[T]he principal purpose of imposing sanctions under [§ 1927] is the deterrence of intentional and unnecessary delay in the proceedings."  In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 187 (3d Cir. 2002). The "courts should exercise this sanctioning power only in instances of a serious and studied disregard for the orderly process of justice."  LaSalle Nat'l Bank v. First. Conn. Holding

Grp., 287 F.3d 279, 288 (3d Cir. 2002) (internal quotation and editorial marks omitted).  "[T]he statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law."  Id. at 289 (internal quotation marks omitted).

And, in this Circuit, the Court may not impose sanctions under § 1927 absent a finding of willful bad faith. In re Prudential, 278 F.3d at 188.  "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." Id.


B.    Sanctions Under Inherent Power of the Court

In addition to the statutory authority pursuant to § 1927, the Court also has the inherent power to control its proceedings and sanction the parties and their attorneys' conduct.  The Supreme Court provided guidance on the Court's use of these inherent powers in Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).  In Chambers, the Supreme Court stated that sanctions may be appropriate only in certain cases, to wit:

> [Where] a party has acted in bad faith, vexatiously,
> wantonly,  or  for  oppressive  reasons. . . .   The
> imposition  of  sanctions  in  this  instance  transcends  a

7

> court's equitable power concerning relations between
> the parties and reaches a court's inherent power to
> police itself, thus serving the dual purpose of
> vindicating judicial authority without resort to the
> more drastic sanctions available for contempt of court
> and making the prevailing party whole for expenses
> caused by his opponent's obstinacy.

Id. (internal citations and quotations omitted).  Nonetheless,
"[b]ecause of their very potency, inherent powers must be
exercised with restraint and discretion."  Id. at 44; see Eash
v. Riggins Trucking, Inc., 757 F.2d 557, 562 (3d Cir. 1985) (en
banc).  "Although a court retains the inherent right to sanction
when rules of court or statutes also provide a vehicle for
sanctioning misconduct, resort to these inherent powers is not
preferred when other remedies are available."  In re Prudential,
278 F.3d at 189.  In sum, then, "[g]enerally, a court's inherent
power should be reserved for those cases in which the conduct of
a party or an attorney is egregious and no other basis for
sanctions exists."  Martin v. Brown, 63 F.3d 1252, 1265 (3d Cir.
1995).


IV.  DISCUSSION

     Defendant moves for sanctions for two separate
interferences by Mr. Soumilas during the discovery process.
First, Defendant moves for sanctions for Mr. Soumilas's Advice
Letters sent to subpoenaed third-parties.  Second, Defendant

8

moves for sanctions for Mr. Soumilas's advisement of Ms.
Ciprietti at her deposition.


    A.   <u>Mr. Soumilas's Sending of Advice Letters</u>

       On October 29, 2009, Defendant filed a motion for
sanctions.  Defendant claimed that Mr. Soumilas improperly
interfered with subpoenas to third parties by advising those
parties not to respond to Defendant's subpoenas.
To sanction Mr. Soumilas pursuant to § 1927 for sending his
Advice Letters, the Court must find that Mr. Soumilas's conduct
has "(1) multiplied proceedings; (2) in an unreasonable and
vexatious manner; (3) thereby increasing the cost of the
proceedings; and (4) doing so in bad faith or by intentional
misconduct."  <u>In re Prudential</u>, 278 F.3d at 188.  In undertaking
this analysis in this case, the Court looks to Federal Rule of
Civil Procedure 45, which governs the subpoena process.

       Rule 45 vests upon counsel the awesome power to coerce
production or require appearance of a non-party to the lawsuit
on such terms and conditions as are set forth in the subpoena.
Indeed, Rule 45 provides a mechanism through which parties to
litigation may obtain information, whether testimonial or

documentary, within the scope of Rule 26(b).[5]  Rule 45 accords

specific roles in the process of obtaining discoverable

information to the party seeking the information, the person

commanded to produce it, and the adversary to the party seeking

the information.

Rule 45 authorizes an attorney for a party to issue a

subpoena requiring a non-party to appear at a deposition,

produce electronically stored information, or produce other

documents.  Fed. R. Civ. P. 45(a)(1)(B)-(D).[6]  In response, the

---

[5]   Rule 26(b) provides, in pertinent part:

Parties    may    obtain    discovery    regarding    any
nonprivileged matter that is relevant to any party's
claim or defense  .  .  .  .   For good cause, the court
may order  discovery  of  any  matter  relevant  to  the
subject  matter  involved  in  the  action.    Relevant
information need not be admissible at the trial if the
discovery  appears  reasonably  calculated  to  lead  to  the
discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

[6]   Rule 45 provides, in pertinent part:

(B)   Command  to  Attend  a  Deposition—Notice  of  the
Recording Method.   A subpoena commanding attendance at
a deposition must state the method for recording the
testimony.

(C)  Combining or Separating a Command to Produce or to
Permit    Inspection;    Specifying    the    Form    for
Electronically   Stored   Information.     A  command  to
produce documents, electronically stored information,
or tangible  things  or  to  permit  the  inspection  of
premises may  be  included  in  a  subpoena  commanding
attendance at  a  deposition,  hearing,  or  trial,  or  may

subject of the subpoena may object to the appearance or the production requested, id. 45(c)(2)(B),[7] move to quash or modify the subpoena before having to comply, id. 45(c)(3),[8] and allows it to do so in its home district.  Cf. id. 45(c)(1).[9]  Further,

---

be set out in a separate subpoena.  A subpoena may specify the form or forms in which electronically stored information is to be produced.

(D)  Command to Produce; Included Obligations.  A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding party to permit inspection, copying, testing, or sampling of the materials.

Id. 45(a)(1)(B)-(D) (emphasis in original).

[7]    This rule provides, in pertinent part:

A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested.

Id. 45(c)(2)(B).

[8]     "On timely motion, the issuing court must quash or modify a subpoena . . . ."  Id. 45(c)(3)(A).

[9]    This section of Rule 45 provides:

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction — which may

an adversary to the party seeking information to move to quash
the subpoena to prevent disclosure of information by the person
commanded to produce it, provided that the adversary has a
personal right or privilege to the information sought.  Id.
45(c)(3)(B);[10] see 9A Charles A. Wright & Arthur R. Miller,
Federal Practice and Procedure § 2463.1 (3d ed. 2008)
(collecting cases discussing right to quash only when party has
a personal right or privilege to information sought).

     Nowhere in the Rule is it contemplated that the
adversary of the party seeking the information may advise, no

---

    include lost earnings and reasonable attorney's fees —
    on a party or attorney who fails to comply."

Id. 45(c)(1).

[10]   Finally, this subsection provides:

    To protect a person subject to or affected by a
    subpoena, the issuing court may, on motion, quash or
    modify the subpoena if it requires:

        (i) disclosing a trade secret or other
    confidential research, development, or commercial
    information;

        (ii) disclosing an unretained expert's opinion or
    information that does not describe specific
    occurrences in dispute and results from the expert's
    study that was not requested by a party; or

        (iii) a person who is neither a party nor a
    party's officer to incur substantial expense to travel
    more than 100 miles to attend trial.

Id. 45(c)(3)(B).

matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command. Yet, that is exactly what happened here. Mr. Soumilas took it upon himself to limit or attempt to "quash" the subpoenas by sending his Advice Letters. In doing so he arrogated to himself a power assigned to the Court under the Rule. The violation is clear and it is sanctionable.

The facts here are very similar to those in <u>Fox Indus., Inc. v. Gurovich</u>, No. 03-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006). In <u>Gurovich</u>, the plaintiff served subpoenas on three non-parties. <u>Id.</u> at *1. The defendant believed that the subpoenas were a "wholesale fishing expedition." <u>Id.</u> at *2. Moreover, the defendant contended that service of the subpoenas were improper. <u>Id.</u> Instead of moving to quash the subpoenas, which the defendant stated it would do, the defendant wrote letters to non-parties requesting that the parties not produce any documents requested by the plaintiff. <u>Id.</u> Indeed, the defendant stated in its letters that, due to the alleged service flaws, "the subpoena is null and void as a matter of law and should not be complied with." <u>Id.</u> (internal quotation marks omitted). Because of the defendant's letters, none of the three non-parties complied with the plaintiff's subpoenas. <u>Id.</u>

13

In that case, the court sanctioned the defendant for abuse of process under its inherent power to manage its affairs. As the court stated, "it is the court's duty to rule on the validity of subpoenas and to direct the recipients to comply or not comply . . . ." Id. at *8.  Specifically, the court there found that the plaintiff's actions constituted bad faith and a "deliberate effort to usurp the authority of the court." Id. at *10.  In the end, the court fined the plaintiff $1,000 per letter. Id.

In both Gurovich and in the instant case, the objecting party stated that it would move to quash the allegedly defective subpoenas, but did not.  Moreover, in both cases Plaintiff requested that the third parties not comply with the subpoenas. See Def.'s First Br. Ex. C ("[W]e feel compelled to advise your organization of these concerns and expect your cooperation in refraining from providing documents and information that would result in an impermissible and unnecessary invasion of privacy.").   While here some of the third parties choose not to follow Plaintiff's advice, some did not produce documents pursuant to Defendant's subpoena. Finally, in both cases the Court was required to grant Defendant leave to re-subpoena the non-responding third parties before all the requested information was produced.

14

Mr. Soumilas argues that "no prejudice" ensued in this case because he later withdrew his Advice letters and ultimately Defendant received the information it sought.  Mr. Soumilas's "no harm, no foul" defense misapprehends the harm he caused in this case.

The harm caused by failure to obey Rule 45 is not limited to the harm inflicted upon a non-party, or even an adversary.  Cf. Spencer v. Stienman, 179 F.R.D. 484, 489 (E.D. Pa. 1998) (Robreno, J.) (sanctioning counsel issuing a subpoena for failure to provide notice to opposing counsel of the issuance of the subpoena), vacated in part on reconsideration by No. 96-1792, 1999 WL 33957391 (E.D. Pa. Feb. 26, 1999).  Rather, as in this case, the harm from disregarding Rule 45 led to the parties filing additional motions, the Court holding hearings, and additional action by the Court.  This not only increased the expense of this litigation to the parties, but required the expenditure of judicial resources unnecessarily.  See In re Prudential, 278 F.3d at 187 ("[T]he principal purpose of imposing sanctions under [§ 1927] is the deterrence of intentional and unnecessary delay in the proceedings.").

Given Mr. Soumilas's disregard of Rule 45 and the subsequent need for this Court to hold hearings, issue leave to re-subpoena third parties, and rule on Defendant's motion for

sanctions, the Court finds that Mr. Soumilas's conduct has
"multiplied proceedings, [] in an unreasonable and vexatious
manner, [] thereby increasing the cost of the proceedings." Id.
at 188.  The question remains as to whether Mr. Soumilas acted
in willful bad faith as required in this Circuit to impose
sanctions pursuant to § 1927.  Id.

        In this regard, Mr. Soumilas argues that he wrote the
Advice Letters not only as an objection to the overbroad
subpoenas, but also to protect the privacy interests of non-
party Teresa Price.  These arguments are unavailing.  Rule 45
provides a specific mechanism to limit a subpoena's scope and to
protect the privacy interests of the subject of a subpoena.
Indeed, Mr. Soumilas admitted that he knew the proper procedure
was to move to quash Defendant's subpoenas.  See Pl.'s First Br.
Ex. A ("We object to your subpoenas and request that you
withdraw them without us having to move to quash.").  Yet, Mr.
Soumilas proceeded to send his Advice Letters in the face of the
clear direction of Rule 45 to obtain a remedy already available
under that Rule.  Given Mr. Soumilas's knowledge of the rules,
Rule 45's clear direction, and that Mr. Soumilas sent the Advice
Letters to hinder discovery, the Court finds that Mr. Soumilas
acted in willful bad faith.  Accordingly, sanctions for
attorneys' fees spent by Defendant in re-subpoenaing the non-

16

responsive third parties, including fees incurred for preparing the motion for sanctions will be awarded pursuant to 28 U.S.C. § 1927.[11]

B.  Mr. Soumilas's Interference at Ms. Ciprietti's Deposition

Defendant also argues that the Court should sanction Mr. Soumilas for advising a non-party witness, Ms. Ciprietti, that he himself had called for deposition, to consult with counsel before she turned over certain documents to the parties in the course of a deposition.  The documents were allegedly subject to a confidentiality agreement between Plaintiff and Ms. Ciprietti's employer, Financial Recoveries.  Defendant claims that this advice to Ms. Ciprietti impermissibly interfered with her answers, and that such advice by Mr. Soumilas was not permitted under Rule 30(c)(2), which outlines the special circumstances in which "a person" may instruct a witness not to answer a question during a deposition.  See Fed. R. Civ. P. 30(c)(2).

---

[11]  Even if the Court were not to find that Mr. Soumilas did not violate 28 U.S.C. § 1927, the Court would sanction Mr. Soumilas under its inherent power for his direct contravention of Rule 45.  See Gurovich, 2006 WL 2882580, at *10.

The Court disagrees that Rule 30(c)(2) provides the rule of decision here.  Rather, the Court views the issue through the prism of a lawyer's obligations under Pennsylvania Rules of Professional Conduct 3.4 and 4.3, which apply to proceedings in this Court.  See Local R. Civ. P. 83.6(IV)(B). Rule 3.4 provides, in pertinent part:

> A lawyer shall not: . . . (d) request a person other than a client to refrain from voluntarily given relevant information to another party unless: (1) the person is a relative or an employee or other agent of a client; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from given such information and such conduct is not prohibited by Rule 4.2.

Pa. R. of Prof'l Conduct 3.4 (2008).  Moreover, Rule 4.3 provides, in pertinent part:

> During the course of a lawyer's representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interests of such person are or have a reasonable possibility of being in conflict with the interest of the lawyer's client.

Id. 4.3(b).  In this case, Rule 3.4 permitted Mr. Soumilas to instruct Ms. Ciprietti if her interest would not be adversely affected, so long as such communication was permitted under Rule 4.2.  Rule 4.2, however, outlines the contact a lawyer may have with a person represented by counsel.  Id. 4.2.  Ms. Ciprietti was not represented by counsel.  Thus, the Court must look to Rule 4.3 for guidance.

18

Here, Ms. Ciprietti's interest would have been adversely affected by disclosing information that Mr. Soumilas believed was subject to a confidentiality agreement.  When viewed in this light, Mr. Soumilas acted properly and in fairness in advising Ms. Ciprietti that before she turns over documents or discusses the contents of the documents she should consult with her employer's counsel.  Not only was Mr. Soumilas protecting Ms. Ciprietti's interest — and thus not acting contrary to that interest as required under Rule 3.4 — Mr. Soumilas acted within the confines of Rule 4.3 by advising Ms. Ciprietti to seek advice of counsel.  <u>See</u> Ciprietti Depo. 30:6-11, 59:18-23, Mar. 31, 2011, ECF No. 91.  Therefore, sanctions are inappropriate here.

**V.   CONCLUSION**

For the reasons stated above, Defendant's motion for sanctions will be granted-in-part and denied-in-part.  An appropriate Order will follow.

19