**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **TERESA PRICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.  09-1332** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRANS UNION, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF TERESA PRICE'S MOTION FOR JUDGMENT IN
HER FAVOR AND FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS AND EXPENSES, ALONG WITH
POST-JUDGMENT INTEREST, FROM DEFENDANT TRANS UNION, LLC**

Plaintiff Teresa Price, through her counsel, hereby moves pursuant to the fee-shifting

provision of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. for an award of attorneys'

fees and reimbursement of costs ("Motion" or "Fee Petition").  Additionally, Plaintiff moves to

have the Court enter Judgment on the fees and costs awarded.  Plaintiff also seeks post-judgment

interest pursuant to 28 U.S.C. § 1961.

The Motion demonstrates that Plaintiff is entitled to an award of attorneys' fees in the

amount of $ 229,377.50 and reimbursement of costs and expenses in the amount of $ 7,551.48.

Plaintiff already has a judgment in her favor and against Defendant Trans Union, LLC for

$10,000, which is the amount of the jury verdict in her favor.  (Docket No. 104).  Plaintiff is also

entitled to lawful interest that may accrue on either or both judgments.

For the reasons set forth more fully in the accompanying Memorandum of Law and supporting papers, which are incorporated by reference herein, Plaintiff's Motion should be granted.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

By:    <u>/s/ *John Soumilas*             </u>
MARK D. MAILMAN
JOHN SOUMILAS
GREGORY GORSKI
Attorneys for the Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
(215) 735-8600

Dated: March 30, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **TERESA PRICE,** | ) | |
| | ) | |
| | ) | **Civil Action No.  09-1332** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TRANS UNION, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR JUDGMENT IN HER FAVOR AND FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF COSTS AND EXPENSES, ALONG WITH POST-
JUDGMENT INTEREST, FROM DEFENDANT TRANS UNION, LLC**

Plaintiff Teresa Price, through counsel, respectfully submits this Memorandum of Law in

support of her Motion for Judgment in Her Favor and for an Award of Attorneys' Fees and

Reimbursement of Costs and Expenses, along with Post-Judgment Interest, from Defendant

Trans Union, LLC (Fee Petition).

**I.      INTRODUCTION**

This Fee Petition follows approximately three years of hard-fought litigation.  This case

was filed on March 27, 2009.  (Docket No. 1).   It proceeded to a jury trial, held between May

17, 2011 and May 23, 2011 at which Plaintiff prevailed.[1]  The jury returned a verdict of $10,000

in favor of Plaintiff and against Defendant Trans Union, LLC, and this Court entered judgment

in that amount in Plaintiff's favor on May 23, 2010.  (*See* Docket No. 104).  Because both parties

filed post-trial motions, Plaintiff was granted leave to file her fee petition 14 days after the

---

[1]      The Fair Credit Reporting Act (FCRA) mandates an award of reasonable attorneys' fees and costs to the consumer in the case of any successful action.  *See* 15 U.S.C. § 1681o(a)(2).  Additionally, Plaintiff moves for the reimbursement of cost and expenses "as of course" pursuant to Fed. R. Civ. P. 54(d)(1).

1

resolution of the post-trial motions.  (Docket No. 108).  This Court denied both parties' post-trial motions by order filed on March 16, 2012.  (Docket Nos. 135 and 136).   Plaintiff now seeks an award of attorneys' fees in the amount of $ 229.377.50 and costs in the amount of $ 7,551.48.  Plaintiff also seeks post-judgment interest as permitted by 28 U.S.C. § 1961.

In support of her present Fee Petition, Plaintiff submits the Declaration of Mark D. Mailman, which is appended hereto as Appendix 1 (Mailman Declaration or Mailman Decl.).  The Mailman Declaration is supported by detailed schedules of time and expenses for each attorney and paralegal who worked on this case (Exhibit A (attorneys M.Mailman, J.Soumilas and G.Gorski and paralegal D.Spang) and Exhibit C (table of costs), attached thereto, respectively); the expert report of Abraham C. Reich, Esq. who reviewed and is familiar with the skill and experience of Plaintiff's counsel and Philadelphia market billing rates, and who supports the hourly rates charged by Plaintiff's counsel (Exhibit B, thereto); and a firm biography outlining the background of Plaintiff's firm and its attorneys (Exhibit D, thereto).

Based upon the Memorandum of Law, appendix and exhibits in support thereof, Plaintiff should be awarded the full amount of the reasonable attorneys' fees and costs sought here.

## II.   **BACKGROUND**

### A.   **Nature Of Action**

This was an action for damages brought by an individual consumer against Trans Union for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, *as amended*.  One of the "Big Three" credit reporting agencies in the world, Trans Union fought this case vigorously at every turn, and it continues to do so.  It challenged Plaintiff's theory of liability and damages and much of her evidence.  Plaintiff was successful at summary judgment and at trial,

and she should be awarded the time and costs her counsel seek herein for prosecuting this consumer case against Trans Union.

Trans Union litigated this fee-shifting case without any regard for economy.  While it was free to embrace such a litigation strategy, it must now bear the responsibility for its recalcitrant defense.  Trans Union's approach calls to mind an observation made by the Fifth Circuit in a case brought under a related federal fee-shifting consumer statute (the Truth-In-Lending Act) where significant time was expended by plaintiff's counsel as a result of the defendant's stalwart defense:

> although defendants are not required to yield an inch or pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost.

*McGowan v. King, Inc.*, 661 F.2d 48, 51 (5th Cir. 1981).  After fighting at every turn, and then losing, Trans Union must now bear the same cost as the defendant in *McGowan*.

### B.    Summary of Claim

The gravamen of Plaintiff Teresa Price's claim was that Defendant mixed her credit file with that of another consumer named Teresa Price for many years and failed to apply the "Do Not Merge" procedure which would have corrected the mixed file.   As a result of Trans Union's conduct, Ms. Price lost an opportunity to help her son finance the purchase of a car and suffered emotional distress, including humiliation and embarrassment.

### C.    Investigation and Complaint

As reflected in the contemporaneously-maintained time records of Plaintiff's counsel, Francis & Mailman, P.C. (F&M), counsel began its investigation into this matter in March of 2009.  (*See* Mailman Decl. at Exhibit A).  Plaintiff's counsel conducted a normal amount of factual and legal research as part of their background investigation into this matter.   Counsel

spoke with Plaintiff at length about the underlying events giving rise to her problem, Trans Union's reporting of the inaccurate credit accounts and public records at issue, her dispute history and the impact that the inaccurate reporting had on Plaintiff's life, reviewed documents provided by Plaintiff and analyzed her claims.  (*See* Mailman Decl.).

The Complaint was filed on March 27, 2009, against Trans Union and a debt collector, Financial Recoveries.  With leave of this Court following a motion, Plaintiff subsequently filed an Amended Complaint.  (Docket No. 54).

Plaintiff settled confidentially with Financial Recoveries early in the proceedings and the case was litigated almost exclusively against Trans Union.  Financial Recoveries did not participate in any written discovery, did not notice or defend any depositions and did not file or respond to any motions or attend any hearings.

### D.   <u>Written Discovery</u>

After the initial pleadings, Trans Union and Ms. Price conducted written discovery, including preparing, serving and responding to interrogatories, document requests and requests for admissions.  As can be gleaned from the binder of documents that ended up being marked by Plaintiff as proposed trial exhibits, the documents in this type of a case can be lengthy and complex, and they were here.  A proper understanding of these documents requires a careful reading, and understanding of the significance of tradelines, furnisher updates, inquiries, account reviews, promotional inquiries, credit scores, and other financial and credit factors.  Additionally, various subpoenas were sent to third parties.   These records also had to be carefully reviewed and analyzed.  The F&M firm's time-records reflect the appropriate amount of time needed for such a review and for written discovery.  (*See* Mailman Decl. at Exhibit A).

Because this Court has found that Plaintiff's counsel should not have written certain "advice letters" to third parties, all of the time Plaintiff's counsel spent on the advice letters, and subsequent motion to compel and for sanctions, has been entirely excluded from this Fee Petition.   (*See* Mailman Decl. and Exhibit A thereto)

### E.      Nine Depositions

Trans Union and Ms. Price then went on to take and defend 9 depositions.  Plaintiff was deposed on January 6, 2010.  Plaintiff's son Garry Price was deposed on January 6, 2010.  Trans Union's corporate representative Steven Newnom was deposed on January 8, 2010.  Trans Union's corporate representative Lynn Romanowski was deposed on January 8, 2010.  Third party CitiFinancial (Lovett Weems) was deposed on March 23, 2011.  Third party Elan Financial (Courtney Murchie) was deposed on April 12, 2010.  Third party Bayhealth (David A. Briele) was deposed on March 31, 2011.  Third party Financial Recoveries (Catharine Ciprietti) was deposed twice, on March 31, 2011 and again on May 4, 2011.

These depositions represent typical party and third party discovery for this type of case and the time-records reflect the accurate and reasonable preparation and deposition time spent. (*See* Mailman Decl. at Exhibit A).

### F.      Motions

The parties filed various motions including: Plaintiff's motion for leave to file an amended complaint, which was granted in part and denied in part (Docket Nos. 32 and 55); Defendant's motion to strike Exhibit 15 to the summary judgment briefing, which was denied as moot (Docket Nos. 42, 60); Defendant's motion for partial summary judgment, which was denied in its entirety (Docket Nos. 37, 58, 59); Plaintiff's motion *in limine*, which was granted in part and denied in part (Docket Nos. 67, 84); Defendant's motion *in limine*, which was granted in

part and denied in part (Docket Nos. 76, 84); Defendant's motion for sanctions related the deposition of third party Catharine Ciprietti, which was denied (Docket Nos. 91, 138), as well as various other procedural motions and submissions.  As both the docket entries and the time records indicate, the pre-trial briefing in this case was extensive.

### G.     Two Settlement Conferences and Settlement Discussions

Counsel prepared for and attended two settlement conferences before the Honorable Thomas J. Rueter.  (Docket Nos. 17 and 23)  During the conferences, counsel negotiated the matter in good faith for several hours.  Despite their detailed meetings with Magistrate Judge Rueter, the parties were unable to reach a settlement.

Plaintiff has no record of a settlement offer by Trans Union at any point in 2009 or 2010, although at one of the settlement conferences with Magistrate Judge Rueter Plaintiff was informed that Trans Union may be willing to pay $5,000 total, allegedly inclusive of attorney's fees and costs, to settle this matter.  As was its litigation strategy, Trans Union showed no serious interest to resolve this matter early in the litigation.

Defendant did make what it called an "offer of judgment" of $75,000, purportedly inclusive of attorney's fees and costs, on February 21, 2011.  The offer was invalid under Fed. R. Civ. P. 68, as it specifically disclaimed liability and was offered "solely to settle."  At that point, however, two years and over $141,000 of litigation fees and costs had already been expended in this case.  (*See* Mailman Decl. at Exhibits A & C).  Moreover, Plaintiff had prevailed at summary judgment, which permitted her to proceed to a jury trial with both her actual and punitive damages claims, and, by this time had already prepared most of her pretrial submissions.[2]

---

[2]        The trial date in this matter was postponed at the request of defense counsel due to serious illness in his family.  (*See* Docket Nos. 85 and 89).  *See* Docket Report generally for filing dates of pretrial submissions.

Plaintiff thus did not accept the settlement offer.  Plaintiff did try to negotiate a settlement pre-trial, but Trans Union was never interested in making any other settlement offer than its "offer of judgment," and never made any other offer to settle.

Similarly, after the jury verdict Trans Union did not show any interest in resolving the case.  Plaintiff's counsel's post-trial attempts to open a settlement discussion went unanswered by Trans Union.

### H.  Pretrial Motions and Submissions

Plaintiff and Defendant filed all of the pretrial submissions required by this Court, such as a Proposed Voir Dire, Proposed Points for Charge, a Proposed Verdict Sheet, Pretrial Memorandum, as well as necessary objections.  (*See* Docket at Nos. 68-71, 81).  Plaintiff's counsel also worked on preparing exhibit and witness lists and other regular trial preparation, including the drafting of opening statements and closing arguments, reviewing and analyzing exhibits, preparing for the examination of witnesses, preparing evidentiary arguments, etc.  The reasonable amount of time that Plaintiff's counsel spent on these matters is set forth in detail in the time-records attached as Exhibit "A" to the Mailman Declaration.

### I.  Trial Preparation and Trial

The trial began on May 17, 2011 and concluded with the $10,000 jury verdict on May 23, 2011.  Although Trans Union had two attorneys at counsel table, Plaintiff tried the case with only one attorney at trial, John Soumilas.  Mr. Soumilas had the assistance of one paralegal in the courtroom each day of trial, Danielle Spang.  He also received support from another attorney in his office, Gregory Gorksi, in the form of legal research and submissions, strategy discussions, and other matters, as reflected in detail in the F&M time records.  (*See* Mailman Decl. at ¶ 2 and Exhibit A).  That time was reasonably expended.

Trial preparation was standard for any trial of this nature.  The F&M time-records show in detail the firm's time that was reasonably spent preparing and selecting exhibits and witnesses, conducting research, refining litigation strategy, drafting legal memoranda, and other reasonable trial preparation that went into this matter.  (*See* Mailman Decl.).

Plaintiff notes that Trans Union listed 13 trial witnesses (Dk. No. 72 at pp. 3-4). Although Trans Union called only three witnesses at trial, Plaintiff had to nevertheless prepare to cross examine all of Trans Union's listed trial witnesses.

**J.     Post Trial Motions**

The parties filed post-trial motions, which were fully briefed by both sides.  (Docket Nos. 107-111 and 121-132.  This Court denied all post-trial motions.  (Docket Nos. 135-136).

**K.     Fee Petition**

Plaintiff has included in this submission only a fraction of counsel's time spent in preparing the instant Fee Petition – less than 10 hours of both attorney and paralegal time.  (*See* Mailman Decl. at Ex. A).  Plaintiff anticipates that Trans Union will oppose the Fee Petition, and that as a result she will also need to file a reply brief.  Plaintiff is entitled to recover for the time spent by counsel in preparing the fee petition.  *Prandini v. National Tea Co.*, 585 F.2d 47, 52-53 (3d Cir. 1978); *see Becker v. ARCO Chemical Co.*, 15 F. Supp. 2d 621 (E.D. Pa. 1998) (counsel awarded compensation for 64.1 hours spent on fee petition).

**L.     Expenses**

The costs expended by counsel are detailed in the Mailman Declaration and Exhibit C thereto.

**M.** **Time Excluded**

Plaintiff originally brought this case against Trans Union and Financial Recoveries. Financial Recoveries was a minor actor in this case and engaged in almost no litigation. Indeed, there was no written discovery served by or on Financial Recoveries by any party and Financial Recoveries settled before any depositions or motions. Although Plaintiff's counsel submits all of its time records for this Court's review, they seek reimbursement for only the portion of time and expenses that were reasonably incurred in prosecuting the case against Trans Union.

In the table below, Plaintiff has set forth the categories of work performed in this case and the amount of time charged to Trans Union. In many instances the work performed would have been done if Trans Union was the only defendant in this case. Nonetheless, Plaintiff's counsel has made many reductions in their hours to reflect the presence of Financial Recoveries in the case. (*See* Mailman Decl. at Ex. A).

| **Category of Time** | **Percent Charged to TU** |
|---|---|
| Case Investigation & Pleadings | 50% |
| Disclosures, Rule 16 Conference | 50% |
| Written Discovery as to TU | 100% |
| Third Party Discovery | 100% |
| Plaintiff's & TU's Depositions | 100% |
| Depositions of Third Parties | 100% |
| Summary Judgment | 100% |
| Settlement & Pretrial | 100% |
| Pretrial Briefing re: Motion *in Limine* and Other Pretrial Submissions | 100% |
| Trial Preparation | 100% |
| Trial | 100% |
| Post-trial & Fee Petition* (with deductions as indicated) | 100% |

Moreover, Plaintiff's counsel has excluded all of their time associated with the "advice letters" that they sent to third parties and Trans Union's subsequent motion to compel and for sanctions. (*See id*.); (*See also* Docket No. 18). Plaintiff has also elected to exclude her attorney time for Plaintiff's post-trial motion for a new trial. Although in Plaintiff's judgment the motion

was necessary and appropriate, and preserved important issues for appeal, she has excluded 100% of attorney and paralegal time devoted to that motion in a further attempt to arrive at a reasonable fee.   The time records attached as Exhibit A and the costs records attached as Exhibit C to the Mailman Declaration are marked up to reflect those and other deductions that Plaintiff has made for purposes of this Fee Petition.

## III.   ARGUMENT

In an FCRA matter, the plaintiff shall recover "the costs of the action together with reasonable attorney's fees" in "the case of any successful action to enforce liability."  15 U.S.C. §§ 1681n(a)(3) & o(a)(2).   After prevailing at trial, there can be no doubt that Plaintiff was successful in this litigation in enforcing liability under the FCRA.

As far as consumer actions are concerned, the recovery in terms of attorneys' fees and costs can be, and often is, considerably higher then the underlying money damages recovered. *See Riverside v. Rivera*, 477 U.S. 561, 564-65 (1986) (no proportionality necessary between damages and fee award in fee-shifting case; finding that $245,456.25 fee award was appropriate in case where total damages were $33,350).[3]  Such is the case at bar.  The amount recovered by any consumer-plaintiff, however, may not be proportionately connected to Plaintiff's attorney's fee request.[4]

Although Plaintiff did not recover punitive damages in this case, she was otherwise successful in enforcing liability and recovering actual damages.  No court has required punitive damages to find that a consumer-plaintiff is the prevailing party in an FCRA matter, and such an

---

[3]     *See also Hall v. Harleysville Ins. Co.,* 943 F. Supp. 536, 547 (E.D. Pa. 1996) ($87,821.48 in attorney's fees and costs in impermissible access FCRA cases that settled confidentially, with fees and costs component to be left up to court in fee petition).

[4]     *See generally Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir. 1996); *see also Oslan v. Law Offices Of Mitchell N. Kay*, 232 F. Supp. 2d 436 (E.D. Pa. 2002).

unreasonably high standard of success would severely undermine the consumer-protection objectives of the FCRA.[5]  Thus, Plaintiff was successful in enforcing liability here and must recoup her substantial attorney's fees and costs, even if they are much higher than her actual damages recovery.

The fact of the matter is that Plaintiff's fees and costs in this case, as set forth below, were reasonably incurred by Plaintiff in battling Defendant's hard-fought defense of this case. They must now be paid by Trans Union.

### A.    A Lodestar Analysis Confirms That The Fee Requested Is Reasonable

According to the U.S. Supreme Court, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The result of that calculation is called the lodestar; the lodestar is strongly presumed to yield a reasonable fee.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The lodestar analysis is generally considered the appropriate method of determining attorneys' fees in federal consumer protection statutory fee-shifting cases such as this case because the shifting of fees serves the public policy of encouraging private enforcement of the substantive rights created by Congress.  MANUAL FOR COMPLEX LITIGATION § 24.13 (3d ed. 1995).

---

[5]    Both Congress and the courts have acknowledged this reality, deputizing private attorneys as "private attorneys general" and making it economically possible for them, through the fee-shifting provisions of several federal statutes, to vindicate consumer rights even in cases where the actual damages may be very low.  *See Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988); *Bryant v. TRW, Inc.*, 689 F.2d 72, 79-80 (6th Cir. 1982) (Congress intended the "private attorney general concept" to apply to the FCRA).

**1.      Plaintiff Has Excluded From This Fee Petition Certain Time**

As indicated above in sections II(D) and II(M), in preparing this request for an award of counsel fees, Plaintiff's counsel has included as Exhibits A and C to the Mailman Declaration all of its contemporaneously-maintained time and cost records in this matter, but Plaintiff moves to recover only a portion of those fees and costs.  (*See id.*).  Specifically, Plaintiff's counsel has reduced its time for activities such as conducting initial investigation, drafting pleadings, preparing initial disclosures and attending the Rule 16 conference by 50% to account for the presence of another Defendant in this matter.   Plaintiff has also excluded all of the time Plaintiff's counsel spent on certain "advice letters" to third parties, and subsequent motion to compel and for sanctions.  Plaintiff had further deducted all of her counsel's time in preparing a motion for a new trial.  Plaintiff has finally elected to seek only a fraction of her attorney time for the preparation of this Fee Petition.

**2.      Hours Expended And Sufficiency Of Lodestar Documentation**

In support of this Fee Petition, Plaintiff has submitted many pages of detailed, contemporaneously-produced time records specifying the date of work performed, the attorney performing the work, the nature of the work, the amount of time spent and the hourly rate charged for the tasks.  This submission readily meets this Circuit's requirement of the degree of specificity required of a party seeking attorneys' fees.  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (specificity required to extent necessary to determine if the hours claimed are reasonable for the work performed), *Morris v. I.C. Systems*, Civ. No. 06-2133, 2009 WL 1362594, at *3 (E.D. Pa. May 15, 2009) (finding Francis & Mailman "time sheets and affidavits…sufficiently detailed to permit determination on the reasonableness of the hours that plaintiffs' attorneys expended on these cases.").

The declaration of counsel submitted herewith also sets forth the basis for the division of labor among the attorneys and paralegals in an efficient manner.  (*See* Mailman Decl.).  There was no time for which compensation is now requested in this case that was "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 433.  All the time submitted was reasonable and for Plaintiff to prevail against Defendant Trans Union.

Several courts in the Eastern District of Pennsylvania have had occasion to apply the *Hensley* analysis to fee claims of prevailing parties under similar consumer protection legislation, the Truth in Lending Act (TILA).  In *Jones v. Mid-Penn Consumer Discount Co.*, 93 B.R. 66 (E.D. Pa. 1986), the late Judge Newcomer reversed a decision of the bankruptcy court that had limited fees to the time spent developing the argument which ultimately prevailed in rescinding the consumer's loan and disallowed hours expended on an alternative TILA claim. Judge Newcomer relied on the *Hensley* principle that "the ultimate success and results achieved should be the relevant guide," *Jones*, 99 B.R. at 67, and held that plaintiff's counsel was entitled to full compensation because she had obtained both rescission and a statutory damages award. The fact that the bankruptcy court had rejected a separate ground for the rescission claim was of no moment.  *Id.  See also Steinbrecher v. Mid-Penn Consumer Discount Co.*, 1990 WL 117979 (E.D. Pa. 1990) (Dubois, J.) (unsuccessful usury and unfair trade practices claims were factually and legally related to successful TILA claims, so no fee reduction was called for);  *Gill v. Mid-Penn Consumer Discount Co.*, 1988 WL 107560 (E.D. Pa. Oct. 14, 1988) (Weiner, J.) (*Hensley* did not allow court to deduct hours spent on an unsuccessful alternative TILA argument).

Importantly, it was not Plaintiff's litigation tactics that increased the time necessary to prosecute this consumer protection action.  As reflected by the time-records, a very substantial bulk of Plaintiff's time was spent responding to repetitive motions and objections made by Trans

Union.  Trans Union did not prevail in any significant way on these motions and objections.  Nor can it fairly argue now that Plaintiff should not have spent substantial time responding to all of the myriad issues that Trans Union raised with this Court.

Finally, Trans Union cannot properly protest that Plaintiff's counsel were inefficient, redundant or wasteful in prosecuting this consumer protection action.  Attorneys John Soumilas and Gregory Gorski litigated the bulk of this matter, and the firm's attorneys apportioned tasks and assignments to avoid duplicative work.  Mr. Soumilas was the firm's sole attorney at trial. (*See* Mailman Decl. at ¶ 3).  By contrast, Trans Union had two attorneys at trial, Timothy P. Creech and Christopher N. Jones.  Moreover, the time records submitted by Trans Union with its Request for Fees (Dk. No. 140), when compared to Plaintiff's time records for the same tasks, demonstrates that Plaintiff's counsel were far more efficient than Trans Union's counsel in litigating this case.

As far as attorney's fees incurred, Plaintiff's counsel handled this matter in a streamlined and cost-effective manner.

### 3.       Hourly Rates

The hourly rates charged for Plaintiff's counsel are well within the range of what is reasonable and appropriate in the Philadelphia legal market.  (*See* Mailman Decl. at ¶¶ 5-6).

First, in support of the Mailman Declaration and hourly rates charged, Plaintiff's counsel has submitted the expert report of Abraham C. Reich, Esq. which has already been approved by a Court in this District.  *See Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 216-17 (E.D. Pa. 2011) (Brody, J.).  Abraham C. Reich, Co-Chair and Partner of the law firm of Fox Rothschild, LLP, and former Chancellor of the Philadelphia Bar Association, has practiced law for over 30 years, and as Co-Chair and Partner of his firm, he is particularly knowledgeable

regarding the applicable Philadelphia market billing rates for civil litigation in the Eastern District of Pennsylvania, as he has had direct involvement in setting and establishing the hourly rates charged by the partners and associates of Fox Rothchild, LLP.  Mr. Reich reviewed in detail the skills and qualifications of Plaintiff's counsel, and although his report is one year old, Plaintiff here petitions for the mid-range of Mr. Reich's proposed hourly rates, not the high range or a more current higher rate.

Courts in this District have approved attorneys with similar experience at similar hourly rates.  *See e.g. Ciccarone v. Marchese,* 2004 WL 2966932, at *6 (E.D. Pa. Dec. 22, 2004) (approving an attorney with 15 years experience at $400) and *Phillips v. Philadelphia Housing Authority*, 2005 WL 3488872, at *6 (E.D. Pa. Dec. 20, 2005) (approving a Community Legal Services attorney with 18 years experience at $330 per hour).  Additionally, according to the Laffey Matrix, *see infra*, Plaintiff's attorneys could charge much higher hourly rates.

Further, the attorneys of Francis & Mailman, P.C. concentrate their practice in the area of consumer protection and consumer litigation, and other courts have approved the same or similar hourly rates of their firm in the past.  *See Chakeijan*, 275 F.R.D. at 216-17; *Morris and Posner v. I.C. Systems, Inc.*, 2009 WL 1362594, at *3 (E.D. Pa. May 15, 2009) (at docket entries 51 and 52, approving F&M hourly rates);  *Smith v. Chili's*, C.A. No. 07-1905(E.D. Pa. Sept. 4, 2008) (at docket entry 49, approving F&M hourly rates);  *Mann v. Verizon*, C.A. No. 06-5730 (E.D. Pa. Sept. 26, 2006) (at docket entry 51, approving F&M hourly rates);  *Mincey v.  Trans Union, LLC,* C.A. No. 05-6282 (E.D. Pa. April 19, 2006) (at docket entries 29, 30, 25, 38, 40, approving F&M hourly rates); *Perry v. FleetBoston*, 229 F.R.D. 105, 121 (E.D. Pa. 2004) (approving F&M hourly rates).[6]

---

[6]     The increase to approved rates from years past, such as from the 2006 *Mincey* fee petition and 2004 *Perry* fee petition, simply reflects the reality that, as almost everything else in the U.S. economy,

Finally, the hourly rates sought by Plaintiff's counsel here are consistent with rates deemed reasonable by the Third Circuit in similar contexts.  *See Interfaith Community Org. v. Honeywell Inter., Inc.*, 426 F.3d 694, 708-10 (3d Cir. 2005).   In *Interfaith,* the Third Circuit agreed with the petitioners that the most recently "updated" version of the Laffey Matrix could be used to determine the appropriate hourly rates in that fee-shifting case, so as to account for inflation reflected in the legal services component of the nationwide Consumer Price Index.[7]  *Id.* at 710.  According to that "updated" version of the Laffey Matrix, endorsed by the Third Circuit at the end of 2005, attorneys with experience comparable to Plaintiff's counsel would be approved at much higher hourly rates than the one sought here.  While the *Laffey* rates approved in *Interfaith* were primarily designed to address the Washington D.C. market, the updated figures are further indicia that the hourly rates for Mr. Mailman, Mr. Soumilas, and Mr. Gorski are reasonable.

As demonstrated above, Plaintiff's counsel charge rates that may be considered *lower* than the typical hourly rate for private comparably experienced attorneys who charge by the hour in the greater Philadelphia market.  That is unusual because, as Judge Posner of the Seventh Circuit Court of Appeals has observed:

> A contingent fee must be *higher* than the fee for the same legal services as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders, but also for the

---

attorney rates have continued to increase in recent years.  *See generally Interfaith Community Org. v. Honeywell Inter., Inc.,* 429 F.3d 694, 708-10 (3d Cir. 2005) (approving use of "updated" version of Laffey Matrix with increase in attorney hourly rates to keep pace with inflation); *see* Hourly Billing Rates Continue to Rise, http://www.law.com/jsp/article.jsp?Id=1134122711101, December 12, 2005; Attorney Bills Get Steeper As Law Firms Raise Hourly Rates http://www.bizjournals.com/baltimore/stories/2006/02/27/story8.html, February 24, 2006.  *See also* Reich expert report, attached to Mailman Declaration as Exhibit B.

[7]     The *Laffey* Matrix is a widely used barometer for assessing the reasonableness of fees in "fee-shifting" cases in the Washington D.C. area reflecting attorney fee rates by years of experience and prepared by Civil Division of the United States Attorney's Office for the District of Columbia.

> loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of a conventional loan.

Posner, *Economic Analysis of Law*, 534, 567 (4th ed. 1992) (emphasis added).

Similarly, federal courts within this Circuit have deemed it appropriate in certain contexts to apply a "fee enhancement" or "delay multiplier" to account for the time-value of an attorney's fee which is not paid in the regular course of billing, but is instead delayed by the nature of litigation. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 476 (3d Cir. 1992) ("In appropriate cases, the lodestar ought to be adjusted to account for the incurred costs of the delay plaintiffs' counsel has undergone in receiving payment").[8]

Here given all of the above factors, this Court should reimburse Plaintiff's attorney's fees by applying Plaintiff's counsel's hourly rates as supported by the midrange of Reich's expert report.  (*See* Mailman Decl. at Exhibit B).

### 4.    Costs

The Mailman Declaration demonstrates the costs that were incurred in the prosecution of this case.  (*See* Mailman Decl., at ¶¶ 10-11 and Exhibit C).  All of the costs were advanced by Plaintiff's counsel and were necessarily incurred.

---

[8]    *See also Blum v. Witco Chemical Corp.*, 888 F.2d 975, 977, 984-85 & n.4 (3d Cir. 1989) (upholding $14,818.63 enhancement for delay in case where previously approved lodestar was $113,314.50; thus 13.1% total enhancement); *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 904, 923 (3d Cir. 1985) (upholding 25% enhancement for delay); *see also Horizon Unlimited, Inc. v. Silva*, Civ. No. 07-7430, 2002 WL 1896297 (E.D. Pa. Aug. 15, 2002) (approving 6% delay multiplier to fee award); *Cerva v. E.B.R. Enterprises Inc.*, 740 F.Supp. 1099, 1107-08 (E.D. Pa. 1990) (approving 7½ to 10½% delay multiplier to fee award); *Vargas v. Calabrese*, 750 F.Supp. 677, 685 (D.N.J. 1990) ($101,971.00 awarded as delay enhancement in matter where lodestar was $400,200.00, amounting to a 10% annual enhancement not compounded), *aff'd in relevant part and remanded in part*, 949 F.2d 665 (3d Cir. 1991)).

5.    **Preparation of Fee Petition**

Plaintiff is entitled to recover for the time spent by counsel in preparing the fee application.  *Prandini v. National Tea Co.*, 585 F.2d 47, 52-53 (3d Cir. 1978).  Plaintiff has included in her submission only a fraction of counsel's time spent in preparing the instant petition -- less than 10 hours of attorney and paralegal time.  (*See* Mailman Decl. Ex. A).  The time expended by counsel in preparing the Fee Petition is reasonably expended as well.  *See Becker v. ARCO Chemical Company*, 15 F. Supp. 2d 621 (E.D. Pa. 1998) (counsel awarded compensation for 64.1 hours spent on fee petition).

B.    **Plaintiff Is Entitled To Post-Judgment Interest**

Pursuant to 28 U.S.C. § 1961, since Plaintiff has obtained a money judgment in a civil case recovered in a district court, Plaintiff is entitled to an award of post-judgment interest.  28 U.S.C. § 1961.  Pursuant to the above-cited statutory provision, this Court should issue an order providing that Plaintiff is entitled to post-judgment interest; that such interest is to be paid by Trans Union, along with the judgment of $10,000, and a judgment for reasonable attorney's fees and costs; and that such interest shall be calculated from the date of the entry of each judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of each judgment.  28 U.S.C. § 1961.

IV.    **CONCLUSION**

For all of the reasons set forth above, Plaintiff's Motion for Judgment in Her Favor and for an Award of Attorney's Fees and Expenses, along with Post-Judgment Interest should be granted.  Plaintiff should be awarded attorneys' fees in the amount of $ 229,377.50 and costs in

the amount of $ 7,551.48.  The total judgment in Plaintiff's favor for attorneys' fees and costs should therefore be in the amount of $ 236,928.98.

<div style="margin-left: 50%;">

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

By:    */s/ John Soumilas*
       MARK D. MAILMAN
       JOHN SOUMILAS
       GREGORY GORSKI
       Land Title Building, 19th Floor
       100 South Broad Street
       Philadelphia, PA  19110
       (215) 735-8600

</div>

Dated: March 30, 2012

19

## <u>CERTIFICATE OF SERVICE</u>

I, John Soumilas, hereby certify that, on this date, I caused a true and correct copy of the foregoing Plaintiff Teresa Price's Motion for Judgment in her Favor and for an Award of Attorneys' Fees and Reimbursement of Costs and Expenses, along with Post-Judgment Interest, from Defendant Trans Union, LLC to be served by way of ECF Notification upon the following individuals:

<div align="center">

Christopher N. Jones, Esquire
Timothy P. Creech, Esquire
Kogan, Trichon & Wertheimer, P.C.
1818 Market Street, 30th Floor
Philadelphia, PA  19103
cjones@ktwlaw.com
tcreech@ktwlaw.com

*Counsel for Defendant*
*Trans Union, LLC*

**FRANCIS & MAILMAN, P.C.**

</div>

  */s John Soumilas*
JOHN SOUMILAS
Attorneys for Plaintiff
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

DATE: March 30, 2012